———o-o-o———

LOUIS ROBERTI AND OTHERS *vs.* WILLIAM J. ATWATER.

In the distribution of an estate one of the lines of a piece of land distributed was uncertain by reason of conflicting descriptions. Held that the testimony of one of the distributors as to what they intended by the description was inadmissible.

A verdict in ejectment was as follows :—" In this case the jury find the issue for the plaintiffs, and therefore find for them to recover of the defendant the seizin and peaceable possession of the premises described in the declaration, and one dollar damages; and that the defendant have until June 1, 1875, to remove the barn." Held that the whole verdict was vitiated by the last clause.

EJECTMENT; brought to the Superior Court in New Haven County, and tried to the jury on the general issue, before *Robinson, J.* Verdict for the plaintiffs and motion for a new trial by the defendant. The case is sufficiently stated in the opinion.

*W. C. Case,* in support of the motion.

*Baldwin,* contra.

PARDEE, J.   The distributors of the estate of Joseph Ball, deceased, in apportioning a piece of land situated in the city of New Haven, between the plaintiffs and Josiah I. M. Beach, the latter being the defendant's grantor, used the following language in the instrument of distribution :—

" We have set to Sarah B. Ball, widow of the deceased, as dower, an undivided fifty-five one hundred and twentieths of the dwelling house and lot, bounded westerly by State street, fifty-nine feet; northerly, by land of the heirs of John Douglass, deceased, in part, and in part by land set in this distribution to Josiah I. M. Beach, in all about two hundred feet; easterly by the New York, New Haven & Hartford railroad, fifty-nine feet; and southerly by land of Ellen Huntington, about two hundred feet.

" We have set to Mrs. Eliza A. Roberti, wife of Louis Roberti, and daughter of the deceased, an undivided sixty-five one hundred and twentieths of the dwelling house and lot set to the widow, Mrs. Sarah B. Ball, as dower.

" We have set to Josiah I. M. Beach, son of Harriet Beach, a daughter of the deceased, the lot of land bounded northerly by Osborn street, seventy-five feet; easterly by the New York, New Haven & Hartford Railroad Company, one hundred and forty-seven feet; southerly by land set in this

distribution to the widow of the deceased, as dower, and to Mrs. Eliza A. Roberti, fifty feet; and westerly by land of the heirs of John Douglass, in part, in part by land of Frederick Dayton, and in part by land of said Beach, in all one hundred and forty-seven feet."

Herein are given double descriptions of the piece of land set to each of the distributees, namely, the land of adjoining proprietors, giving their names and the length of the exterior lines in feet. In point of fact the aggregate length of the east line of the land owned respectively by the heirs of John Douglass and by Frederick Dayton and of the land thereto-fore owned by Josiah Beach, was only about one hundred and twenty-seven feet, leaving a discrepancy of about twenty feet between the two descriptions of the west line of the piece set to Beach. If the defendant, his grantee, can hold to the depth of a hundred and forty-seven feet, then he is in rightful possession of the demanded premises; if he can hold only so far as he bounds and touches upon the land of the three adjoining proprietors named, then he has disseized the plaintiffs. The controversy is simply as to which of the two descriptions shall prevail. They cannot be reconciled.

For the purpose of explaining the distribution, and showing that the disputed premises were set off to the plaintiffs, the plaintiffs introduced a witness who testified that he lived opposite the land in question, and then taking the return of the distributors in his hand, described to the jury on the map the land as he claimed it was described in the return. To this evidence the defendant objected, but the court admitted it. The witness further testified that he was one of the distributors, and was then asked: "What line did you, as a distributor, in making your return of the distribution in question, intend by the line described in this return as the southerly boundary of the part set to Beach?" To this question the defendant objected, but the court admitted it. The witness replied: "The straight line made by extending that fence," pointing to the south fence of the Douglass lot. The court charged the jury that the mere intention of the distributors, apart from any

act done by them, could not be considered by the jury; but that the jury might consider what they did when they went upon the land to set out the parts of it to the heirs, and might consider what boundary line they intended to describe in their return as the line then established between the heirs.

In *Benedict* v. *Gaylord*, 11 Conn., 332, where the grantor in a deed described the premises in the first place by fixed, known and visible metes and bounds, as well as by corresponding courses and distances, and then added a further description bounding the land on its several sides by the adjoining proprietors, and the grantee claimed land within the latter description which was excluded by the former, it was held that parol evidence was inadmissible to show that the grantor intended to convey the demanded premises. The court said:—" But the defendant insists, notwithstanding, that parol evidence should have been admitted for the purpose of proving that the parties to these deeds intended to convey the tract of twenty-one acres and forty-seven rods and supposed it was embraced in the first and particular description. If the two descriptions in these deeds had been equally certain, as the defendant claimed, it might have been contended that a latent ambiguity existed which might be explained by parol; but we have already seen that this is not true. * * * The only effect of the parol evidence offered was to control the legal construction and effect of the deeds, in manifest violation of well settled principles of law."

In the case before us the plaintiffs, while asking for the admission of the parol testimony, also asked the court to instruct the jury as a matter of law, not that the two descriptions were equally certain, but that one controlled the other by reason of its superiority in that particular.

In *Nichols* v. *Turney*, 15 Conn., 111, the court said: "We fully agree with all that has been said as to the danger of parol evidence, particularly arising from supposed declarations in adding to or explaining written instruments; and while extrinsic circumstances are constantly admitted to explain and give a different import to a will from that which

it would seem to demand, the language of the testator tending to explain his meaning is carefully excluded; and where the description of the person or thing is wholly inapplicable to the subject intended or said to be intended by it, evidence of his declarations of intention are wholly inadmissible."

And on this subject the rules of interpretation are the same in deeds and wills.

We think that the rights of the distributees are not dependent upon the present recollection of the distributor as to his secret undeclared intention in using particular words of description in his return to the probate court; and that there was error in the admission of the testimony of the distributor as to such intention, and that this error was not corrected by the language of the charge.

Again. The verdict is faulty in substance. The issue was, had the defendant done the wrong and disseizin charged in the declaration. Upon this the jury made the following finding: " In this case the jury find the issue for the plaintiffs, and therefore find for the plaintiffs to recover of the defendant the seizin and peaceable possession of the premises described in the declaration, and one dollar damages, and their costs; and that the defendant have until June 1st, 1875, to remove the barn." It is clear that the jury believed that they were authorized to name a day in the future prior to which the defendant might enter upon the plaintiffs' land without their consent and remove the barn. It is to be presumed that this belief entered into and produced the verdict, and that the jury would not have agreed to any portion of it as actually rendered unless this condition had been embodied in it. To strike off the condition and allow the remnant to stand is for this court to make and record a verdict which the jurors refused to render. They practically declared themselves unable to agree upon one within legal limits, and we cannot perfect that which they left thus imperfect.

As upon either of these two points a new trial must be granted we omit any discussion of other questions presented by the briefs.

A new trial is advised.

In this opinion the other judges concurred, except PHELPS, J., who did not sit.