LOUIS ROBERTI AND WIFE vs. WILLIAM J. ATWATER.

In a distribution a piece of land was divided between two heirs, the portion set to one being described as bounded "east on the railroad 147 feet," and "west on lands of *A, B,* and *C,* in all 147 feet," and that set to the other, which extended further west, as bounded "east by the railroad 59 feet." The whole length of the abutting line of the lands of *A, B* and *C* was only 127 feet, and the 147 feet on the west could be made out only by extending the line into what was apparently intended as the portion of the other heir, while the whole length of the original lot along the railroad was only 186 feet. The lands of *A, B* and *C* were fenced on all sides. Held—

1. That the descriptions of the two portions being irreconcilable, neither had any preference over the other by reason of its priority in the distribution.
2. That the matter was to be determined by the intent of the distribution, ascertained from the instrument itself, and not from inquiry as to the actual intention of the distributors.
3. That although the fences along the lands of *A, B* and *C,* were not referred to in the distribution as monuments, yet as they marked definitely and visibly the line of the lots on which the premises were bounded, they were to be regarded as the boundaries intended by the distribution.
4. That extrinsic evidence was admissible with regard to the existence and character of these fences at the time the distribution was made.

EJECTMENT by husband and wife to recover possession of a piece of land claimed to belong to the wife; brought to the Court of Common Pleas of New Haven County, and tried to the jury on the general issue before *Robinson, J.*

Both parties claimed under the following distribution of the estate of Joseph Ball, made on the 5th day of February, 1873, Mrs. Roberti as an heir, and the defendant as grantee of Josiah I. M. Beach, another heir.

"To Sarah B. Ball, widow of the deceased, as dower, the following described real estate: An undivided fifty-five one hundred and twentieths of the dwelling house and lot, bounded westerly by State street, fifty-nine feet; northerly by land of the heirs of John Douglass, deceased, in part, and in part by land set in this distribution to Josiah I. M. Beach, in all about two hundred feet; easterly by the New York, New Haven & Hartford Railroad, fifty-nine feet; and southerly by land of Ellen Huntington, about two hundred feet, .　　.　　$5,500.

"To Mrs. Eliza A. Roberti, wife of Louis Roberti, and

daughter of the deceased, an undivided sixty-five one hundred and twentieths of the dwelling house and lot bounded westerly by State street, and more particularly described in the distribution above to the widow as dower, . . . $6,500.

" To Josiah I. M. Beach, son of Harriet Beach, daughter of the deceased, the lot of land bounded northerly by Osborn street, seventy-five feet; easterly, by the New York, New Haven & Hartford Railroad Company, one hundred and forty-seven feet; southerly, by land set in this distribution to the widow of the deceased as dower, and to Mrs. Eliza A. Roberti, fifty feet; and westerly by land of the heirs of John Douglass in part, in part by land of Frederick Dayton, and in part by land of said Beach, in all one hundred and forty-seven feet, . . . . . . . . $4,500."

It was conceded by both parties on the trial that the line running along the rear of the Douglass and Dayton lots, and of the original Beach lot, from the line of Osborn street to the southeast corner of the Douglass lot, measured only one hundred and twenty-seven feet, and that from Osborn street along the line of the railroad to the Huntington land, it was only one hundred and eighty-six feet.

The court, in its charge to the jury, read over the portion of the distribution, which described the lot set to Mrs. Roberti, and that set to Beach, and then proceeded as follows:

" It is conceded that these two descriptions are irreconcilable, and that the difficulty arises out of the description of the depth of the Beach lot. If the Beach lot is to be 147 feet deep as described, then the northerly and easterly boundaries of the plaintiffs' lot are misdescribed, and if the northerly and easterly boundaries of the plaintiffs' lot were correctly described, then the 147 feet of depth is wrong; so that a very important part of your duty is to decide where the mistake is; whether it is in calling the Beach lot 147 feet deep when it was only 127 feet deep, or whether it was made in describing the plaintiffs' land.

" Now in deciding where this mistake is you may look first at the other parts of the description of these two lots. According to the distribution the Beach lot is to be a lot

bounded north by Osborn street, east by the railroad, south by the land set to Mrs. Roberti, and west by three pieces of land belonging to Douglass, Dayton, and Beach. Mrs. Roberti's lot is to be a lot of 59 feet width in front and rear, and of about 200 feet length on each of the two sides. This you may consider in inquiring where the mistake lies, and whether the depth of the Beach lot was 127 or 147 feet.

"Again, in settling this mistake you may compare the conflicting descriptions with the other descriptions of the land, that is, you may compare the 147 feet description with the other description of the depth by the abuttals upon adjoining land. Now in this distribution the same line which is described as 147 feet is also described as dividing the Beach lot from the lots of Douglass, Dayton, and Beach. But this line between the Beach lot and the lots of Douglass, Dayton, and Beach is only 127 feet, and thus if the description of the line by abuttal on these lots is right, the description of it as 147 feet is wrong. The question then arises : Which of these two lines is to control ? Is the line by abuttal, which is 127 feet, or the line by feet alone, which is 147 feet, to be taken as the true one ?

"The rule of law is that the most certain and definite description shall control the description which is less certain and definite. Thus, when there are fixed bounds the rule is that the known and fixed monuments control the courses and distances in case of a conflict, and the term *monument,* as thus used, comprehends fences, posts, trees, and similar fixed objects; and if you find that, at the time of the distribution, the three lots fronting on State street, owned respectively by the heirs of John Douglass, Frederick Dayton, and J. I. M. Beach, were fenced in on all sides, so as to be definite inclosures, and that the existence and location of these fences were at that time well known to the distributors and to all the parties interested in the Ball estate, as marking the bounds of these lots, then I charge you that the southwestern corner of the lot distributed to Beach, and now owned by the defendant, is not extended beyond the southeastern corner of the Douglass lot, merely by the mention of 147 feet as his westerly boundary.

"Furthermore, in determining where this mistake is, you will consider the intention of these distributors, as evidenced by the distribution itself. And in arriving at this intention you must take the whole distribution together. The party first mentioned does not acquire any higher rights by reason of his priority in the distribution, but the whole distribution must be considered in construing it."

The jury having returned a verdict for the plaintiffs, the defendant moved for a new trial for error in the charge of the court.

*W. C. Case,* in support of the motion.

The rule requires that the distribution shall be construed "*ex suis visceribus.*" It is not true that reference to extraneous facts and circumstances is permissible *merely* because the descriptions are conflicting and irreconcilable. 3 Washb. Real Prop., 348 *et seq.; Howe* v. *Bass,* 2 Mass., 380; 2 Phillips on Ev., (5th Am. ed.,) 531, 532, 540–546, and authorities there cited. Of two or more descriptions, that one is to control which is the more fixed, certain and definite, and if a description by boundaries appears on its face to be incomplete, and furnishes no fixed, certain and visible monuments, then a description by measurement will prevail. *Benedict* v. *Gaylord,* 11 Conn., 332; *Davis* v. *Rainsford,* 17 Mass., 207; *Long* v. *Merrill,* 24 Pick., 157. Which of these descriptions is the most certain? Here are no fixed, known and visible metes and bounds, but the language of the distribution is: "westerly by land of the heirs of John Douglass *in part, in part* by land of Frederic Dayton, and *in part* by land of said Beach, in all 147 feet." The only description of the land which is fixed, certain and complete, is the distance; the boundaries are only boundaries *in part,* and the description by boundaries is upon its face indefinite and incomplete, because it does not appear whether *all* adjoining proprietors on the west are mentioned or not. Reference to the language describing the *eastern* boundary of Beach's lot, shows that it was the intention of the distributors to set to Beach 147 feet in depth. That boundary is described before the western boundary, and was

apparently the controlling description in the minds of the distributors at that time. "The limits of another's land referred to generally, without particularity of description, or known and certain boundaries, are descriptions of great uncertainty, and can only be rendered certain by investigation and survey." *Benedict* v. *Gaylord*, 11 Conn., 336. There is, therefore, a controlling description in the distribution itself, namely, the description by measurement. There is no latent ambiguity, and reference to extrinsic facts is not necessary and not permissible. *Ferriss* v. *Knowles*, 41 Conn., 312. But the court below charged the jury that they might, in case of conflict, supplement the description by boundaries, by monuments not mentioned in the distribution, and might find the description so supplemented to be the more certain and complete. The jury were told that the simple fact of conflict between the descriptions, warranted them in resorting to extrinsic facts for the purpose of determining which description should control. This was clearly erroneous. Monuments which are to control courses, distances and measurements, must be called for by the instrument of conveyance. *Allen* v. *Kingsbury*, 16 Pick., 235 ; *Tymason* v. *Bates*, 14 Wend., 671, 680.

*S. E. Baldwin*, contra, cited *Belden* v. *Seymour*, 8 Conn., 25 ; *Howe* v. *Bass*, 2 Mass., 380 ; *Curtis* v. *Francis*, 9 Cush., 427, 437 ; *Smith* v. *Smith*, 110 Mass., 302, 304.

Loomis, J. Both parties claim title to the locus in quo by virtue of the same instrument, namely, the return of the distribution of the estate of Joseph Ball deceased.

The plaintiffs claim, in behalf of Mrs. Roberti, as an heir at law of the deceased, that the land in dispute was set to her, while the defendant claims that it was set to his grantor, Josiah I. M. Beach, another heir at law of the deceased. The controversy arises from the fact that the distribution gives conflicting descriptions of the land distributed. It is minutely described as abutting on the land of the adjoining proprietors, and at the same time the length of the exterior lines is given, which on the east and west sides is found to exceed the actual length of the abutting lines by about twenty feet.

The claim of the defendant is that his western boundary, being on Douglass in part, Dayton in part and Beach in part, and described in the distribution as "in all one hundred and forty-seven feet," entitles him absolutely to one hundred and forty-seven feet, although it is conceded that the entire length of line on those three persons is only one hundred and twenty-seven feet; and although, if this assumption is true, the land should also have been bounded west, in part, on land set to Mrs. Roberti.

The defendant also claims that, as his eastern boundary on the railroad gives one hundred and forty-seven feet, he is entitled to that precise number of feet, although the entire length of the eastern line of the land to be distributed was only one hundred and eighty-six feet, and Mrs. Roberti's portion is also bounded east on the same railroad fifty-nine feet, when, (if the defendant's claim is true,) it should have been only thirty-nine feet, and should also have bounded east, in part, on land set to Beach, the defendant's grantor. This is not a case where either party has any priority of right by virtue of priority in the distribution. The instrument to be construed is one, and all its provisions must be considered together. As there is no way of reconciling the two descriptions, so that both may stand together, the question is which must prevail; and this must be determined as matter of legal construction. For the purpose of determining this question we may summon to our aid certain rules of law which are applicable.

The cardinal and fundamental rule is that the intention of the parties is in all cases to govern the construction; not the intention to be found as an independent fact from extrinsic evidence, but to be derived from the instrument itself. The distributors have finished their work and cannot be again called to state what they intended. See this case as reported in 42 Conn., 266.

Another principle is that descriptions about which there is the least certainty must yield to those of the greater certainty. And it is well settled, as a general rule, that measurements must yield to boundaries or monuments, when certain, or capable of being made certain. *George* v. *Wood*, 7 Allen, 14;

*Belden* v. *Seymour*, 8 Conn., 25; *Curtis* v. *Francis*, 9 Cush., 427.

The rule which gives to monuments and boundaries a controlling effect is not inflexible; boundaries may be inadvertently inserted or omitted, they may contravene all the other terms of description, so that to adhere to them might defeat the evident intention of the parties, in which case the extent of the grant would have to be determined by other portions of the description. *Morse* v. *Rogers*, 118 Mass., 572.

But with these qualifications the rule may be safely applied. It holds good in all cases where the reason of it exists. Whenever a person is about to purchase land he naturally looks at the fences and visible monuments which inclose it and estimates its quantity and value by that means, and the parties are less liable to be mistaken as to such visible indications of the line than they would be as to measurements.

This is not a case where the limits of another's land are referred to generally, and there are no visible indications of the location of such limits; but the abutting land is found by the jury to have consisted of definite inclosures fenced in on all sides, the existence and location of which were well known. We think therefore in this case that such boundaries are more certain and less liable to mistake than the measurements. And as applicable to the facts of the case we think the judge correctly charged the jury that, " if they should find that at 'the time of the distribution the three lots fronting on State street, owned respectively by the heirs of John Douglass, Frederick Dayton and J. I. M. Beach, were fenced in on all sides, so as to be definite inclosures; and that the existence and location of these fences were at that time well known to the distributors, and to all parties interested in the Ball estate, as marking the bounds of said lots; then the southwestern corner of the lot distributed to Beach, and now owned by the defendant, is not extended beyond the southeastern corner of the Douglass lot, merely by the mention of one hundred and forty-seven feet as his western boundary."

The counsel for the defendant complains of this part of the charge, that it supplements the description by boundaries by

Roberti *v.* Atwater.

a reference to monuments not mentioned or called for in the distribution. But we understand the charge as referring to fences, not as monuments in themselves, but as marking definitely and visibly the line of the lots on which the distributed premises were bounded, and for this purpose extrinsic evidence was admissible, upon the ordinary principle that you may always by such evidence identify and locate the boundaries or monuments described in the deed.

But this case may be considered in another aspect leading to the same conclusion.

In case of conflicting descriptions we may sometimes reject one as the false description and adopt the other as true. Of course the assumption that one description is false is not to be arbitrarily made, but it is to be derived from the instrument itself, with proof of such facts as are competent to be shown in aid of the construction of a written instrument; and that description is to be adopted as true which is most in harmony with the apparent intention as gathered from the same source.

There is in this case other evidence besides the presumption arising from the rule that boundaries are more certain than measurements, to show that the mistake was in the measurements and not in the boundaries. The conflict here is not simply between descriptions by abuttals and by measurements, but as applicable to the east line there is a conflict of measurements. If the defendant is entitled to his hundred and forty-seven feet east on the railroad, because the distribution says so, then Mrs. Roberti is entitled to her fifty-nine feet east on the railroad for the same reason; but a hundred and forty-seven feet and fifty-nine feet cannot both be contained in a hundred and eighty-six feet, which is the entire length of the east line of the land to be distributed. There must have been a mistake somewhere in measuring. The argument for the defendant here assumes that Mrs. Roberti's measurement must yield to the defendant's measurement. We know of no presumption that would give the benefit of the mistake to the defendant rather than to her. Indeed, if it was within our province to presume at all, we should say a mistake of twenty feet would be more likely to be made on the long east line of the defendant than on the short line of Mrs. Roberti.

Now if we reject the measurement as being false or mistaken, all the other parts of the description apply with perfect accuracy. Every boundary of the Beach land on the adjoining owners is as it should be; and every boundary of the. Roberti land is equally correct. But, on the other hand, if we give effect to the measurements, neither piece is correctly described by the abuttals. We conclude therefore that there is enough of the consistent and intelligible portions of the description to give effect to the intention of the parties, and we feel authorized in this case to reject the measurement as erroneous and repugnant to that intention.

A new trial is not advised.

In this opinion the other judges concurred; except CARPENTER, J., who did not sit.