KATHERINE HAWLEY
*vs.*
JOHN A. MACDONALD,
STATE HIGHWAY COMMISSIONER

Superior Court          Fairfield County          File No. 54744

MEMORANDUM FILED JANUARY 16, 1940.

*Charles Covert,* of Stamford, for the Plaintiff.

*Frank J. DiSesa, Assistant Attorney General,* for the Defendant.

O'SULLIVAN, J.   This is an "appeal" taken under section 530c of the 1935 Cumulative Supplement to the General Statutes, from the establishment by the highway commissioner of boundary lines of a section of a state highway in the Town of

Redding.  The lines having in his opinion become lost or un-
certain, he proceeded to reestablish them and, in so doing, ran
one across land which the plaintiff claims that she and her pre-
decessors in title have always owned.

At the commencement of the trial, the parties being at odds
as to the appropriate procedure, the court ruled that upon the
commissioner rested the burden of proving that the boundaries,
as defined by him, were those originally established.  To this
he took formal exception.  And now he again insists that the
burden has been misplaced.  The court, however, will adhere
to its original ruling.

While the statute provides that any person affected by the
newly defined boundary lines may "appeal" to the Superior
Court, the process does not actually involve an appeal in the
sense in which that word is customarily used.  In its broadest
meaning, the term "appeal" is employed to indicate the recog-
nized right which an aggrieved party has to put to the test of
judicial review some phase or phases of a controversy between
two or more parties, which already has been heard and de-
termined in whole or in part by some inferior court or ad-
ministrative agency.  But in an "appeal" from the reestablish-
ment of lost boundaries, the aggrieved party is not seeking the
review of the conclusions of an inferior forum before which he
has had an opportunity fairly to present the merit of his side of
a controversy.  Hence, it is not comparable to those instances
of trials de novo, because there never has been a previous trial.
This "appeal" is, in effect, an original application to this court,
citing in the commissioner to justify the lines he has established.
The ordinary conception of fairness should require him to as-
sume the burden of proof, regardless of the title the statute
gives to the process.  It would, indeed, be a travesty to permit
the commissioner, after he, and he alone, has taken the affirma-
tive act of running a highway boundary in such a manner as to
encroach on my neighbor's land, to sit back and insist that my
neighbor prove that the boundary as thus defined, is wrong.
Accordingly, I reiterate that the burden of proof rests on the
commissioner.  It should be added, however, that this ruling is
of no practical importance in the present case, because the bet-
ter evidence supports the plaintiff's position, as I hope to
demonstrate.

In the course of the trial, the commissioner introduced, over
objection, a certified copy of a committee's report found in

volume one of the Redding Land Records. The report begins as follows: "We the Subscribers hereto, viz.: Stephen Mead, Gurdon Marchant and Daniel Sanford, all of Redding, in the County of Fairfield being by the Town of said Redding at a Town Meeting held in said Redding April the 10th, A.D. 1769 appointed a Committee to lay out the Country Road through the Easterly part of said Redding four rods in width from Fairfield to Danbury, have on the 13th and 14th days of April, A.D. 1769, surveyed and bounded out a Highway four rods in width in manner following, viz. . . ." Thereafter the report indicates the layout by various courses and distances.

This report was the result of the following vote taken at a town meeting legally warned and held on April 10, 1769: "Put to vote whether the Country Road that leads from Fairfield to Danbury through the Easterly part of Redding shall be reduced to four rods wide or not. Passed in the affirmative.

"Voted also that Stephen Mead, Gurdon Marchant and Daniel Sanford shall be a Committee to lay out the Country Road four rods in width from Fairfield to Danbury also exchanging where it shall be thought necessary all at the Proprietors costs."

The commissioner used the layout of this committee as a basis from which to establish the lost boundaries. Not that he accurately followed it, nor did he attempt to do so. He moved and shifted the courses and lengthened and shortened the distances as suited his opinion of the need so to do, in order to conform to existing conditions along the highway, and meet as nearly as possible the data found in the survey.

The plaintiff had objected to the admission of the committee's report on the ground that prior to 1773, towns were without authority to lay out country highways and furthermore, that the Town of Redding had failed to accept the survey. By way of explanation, it should be observed that the word "country" when used in connection with a highway referred to those ways which ran from plantation to plantation, while "particular" highways were those not running between towns. *Canastota Knife Co. vs. Newington Tramway Co.,* 69 Conn. 146, 165.

The plaintiff now urges the court to ignore the survey as evidence improperly admitted and she cites as authority therefor two early Connecticut cases, *Fowler vs. Savage,* 3 Conn. 90 and *Watrous vs. Southworth,* 5 id. 305. Those cases held that

proffered evidence, in the form of a certified copy of a layout of a country road made by selectmen, was inadmissible, first, because the layout had not been accepted by the town, and secondly, because, prior to 1773, towns had no authority at all to make one (Statutes, ed. 1750, p. 380).

These citations would appear, at first blush, to control the situation presented by the facts in the instant case, inasmuch as the survey was made in 1769, and furthermore, while it had been spread on the land records, the town had taken no action to adopt it.

It is rather difficult to determine whether the *Fowler* and *Watrous* cases were overruled by *Brownell vs. Palmer*, 22 Conn. 107, 118. *See, also, State vs. Merritt*, 35 Conn. 314, 316. But conceding that they still remain the law, this distinguishing feature is apparent. In both the *Fowler* and *Watrous* cases, the offer of the survey was made for the purpose of proving thereby the establishment of a highway. In the case at bar, the survey was offered and admitted to prove, not the establishment of a highway, but the lines by which an already existing highway was narrowed.

In 1769, a highway, six rods in width, ran along the property now owned by the plaintiff. How it happened to be laid out is somewhat uncertain, but the fact is that it was there. It may have been established by the Colony, or the selectmen, or the proprietors of the original patent reservation.

The Town of Redding was incorporated in 1767, just two years before the committee made the new layout. There being no record that during those two years the newly created town had established the highway, the real probabilities are that it was authorized either by the Colony, though no record thereof is available, or that it was dedicated by the original proprietors. It appears more certain that the last alternative accounts for its existence. As far back as May 8, 1712, one Nathan Gold and others were empowered by the General Court "to sell all the country land between Fairfield and Danbury reserving meet passages for highway." Col. Rec., vol. 1706-1716, p. 333. And if it was so dedicated, it was also accepted and used by the unorganized public, as indicated by the wording of the vote of the Redding town meeting.

The offer of the survey in the present case was, therefore, proper and the data contained therein may be considered, not, I repeat, to prove the establishment of a highway, but solely to

demonstrate the extent to which an existing legally established highway has been narrowed.

Of course, no one dare say he is certain, from the facts and data confronting him, where the exact boundaries as set by the committee were located. It must be appreciated that the compass in use in those days was too crude an instrument to avoid considerable error in the amount by which a true course could be determined. It was difficult to run a line more definite than within thirty minutes, while the use of the chain employed in measuring distances made accuracy almost impossible.

The commissioner has not followed the courses and distances the survey recites. I doubt if a single angle he portrays on his map conforms to the the committee's survey, and equally is this true of his distances. He has, of course, honestly endeavored to make all of his highway boundaries meet as nearly as possible the data he found in the survey.

Speaking judicially, however, and not as a supersurveyor, I cannot agree with him in the manner in which he has laid his lines in the section under consideration, and my reason therefor is this. On the east side of the highway, as shown on the map, exhibit 6, there is indicated on land owned by one Dorgan the remnants of an old stone wall about 40 feet in length. Stone walls of such an ancient vintage as well as that which runs along the plaintiff's property offer strong evidence of boundary lines. *Roberti vs. Atwater*, 43 Conn. 540, 546; *Tierney vs Second Ecclesiastical Society*, 103 id. 332, 335.

The remnant of this old wall is substantially six rods from the stone wall across the highway along the plaintiff's property. It seems highly probable that these bounded the original six-rod road. If this be the fact, then with equal reason may it be said that the westerly stone wall, which is practically straight along the section in question, provided the bound of the original highway. In making the new layout, the committee narrowed the road on the east, leaving the westerly side unchanged.

Accordingly, the "appeal" must be sustained and the boundary line on the west along the plaintiff's property is declared to be the existing stone wall.