HENRY R. MARTIN *et al.*

*v.*

ISABELLA H. CLARK *et al.*

*Filed at Springfield May 14, 1886.*

1. CONSIDERATION—*to support deed of assignment by wife to pay husband's debts.* An agreement of creditors to release their debtor is a sufficient consideration to support a deed of assignment, made by the debtor and wife, of her lands to a trustee, for the benefit of the creditors.

2. TRUST—*declaration of trust—what sufficient.* If an agreement between a debtor and his creditors for the conveyance of the land of the wife of the former, in trust for the payment of his debts, shows upon what trust the conveyance is to be made, the copying of it in the deed before its execution will show the trust upon which she parts with her land, although she may not have signed such agreement.

3. SAME—*conveyance in trust—how far absolute—of the interest remaining in the grantor.* A written agreement was entered into between a debtor and his creditors, to the effect that the former should cause his wife's lands to be conveyed to a trustee to be agreed upon, who was to have power to sell the lands and personal property to be included in the deed, and distribute the proceeds, after paying the expenses of the trust, *pro rata,* among the creditors, and any surplus to the debtor, and in consideration thereof the creditors agreed to release and forever discharge him from all his debts, etc., and the debtor and his wife made such conveyance, in which such written agreement was copied: *Held,* that by such agreement and conveyance the debtor and his wife parted with their entire interest in the lands, and the husband's debts were forever discharged. The only interest the debtor had in the matter was any surplus that might be left after paying all his debts.

4. SAME—*sale by trustee—how far binding—remedy if sale is wrongfully made.* If a trustee holding land for the benefit of creditors sells and conveys the same to a purchaser, with the consent of some of the principal creditors, they will be estopped to complain that the sale is wrongful, and the sale, if wrongfully made without the consent of the *cestuis que trust,* can not be set aside, unless on bill filed by them without unreasonable delay. If they fail to take prompt measures to avoid the sale, they will be held bound by it.

5. If a trustee should fraudulently convey trust property held by him, to one, without security for the price and without the consent of the beneficiaries, the latter may, on bill, have the sale set aside, and compel the trustee to proceed and further execute the trust, or perhaps have him removed and one appointed in his place to execute the trust.

6. FRAUD — *inducing wife to convey her land in payment of her husband's debts—of the proof required.* After the lapse of many years the deed of a married woman conveying her land to a trustee for the benefit of her husband's creditors, and after the death of the party implicated in the transaction as having induced her to execute the same, should not be set aside, except it is shown by the clearest and most satisfactory evidence that it was fraudulent. It will not be set aside when it appears she was fully advised of the circumstances and of her rights, and acted after due care and deliberation.

7. PRACTICE IN SUPREME COURT—*error not affecting party's interest.* Where a party assigns for error the dismissal of his bill seeking to set aside a conveyance which divests him of all title, and a mortgage given by the grantee under such conveyance, if the decree is affirmed in so far as it refused to set aside the conveyance, it will be a matter of no interest thereafter to such party whether the mortgage is set aside, or a decree foreclosing the same is reversed, or not.

APPEAL from the Circuit Court of Vermilion county; the Hon. J. W. WILKIN, Judge, presiding.

Mr. H. T. HELM, and Mr. J. B. MANN, for the appellants.

Mr. GEORGE F. HARDING, and Mr. F. BOOKWALTER, for the appellees.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

It appears from this record that on the first day of August, 1871, Pamelia Martin, since deceased, was the owner of the lands in controversy, situated in Iroquois county, consisting of four hundred and eighty acres. These lands had been conveyed to her by George K. Clark, since deceased, and were at the time encumbered by two trust deeds,—one made by Pamelia Martin and Ezra H. Martin, to David J. Lyon, dated January 20, 1871, to secure a note of E. H. Martin and wife to George K. Clark, of the same date, for the sum of $4000, with interest; and another trust deed, dated February 18, 1871, made by the same parties to Henry T. Helm, to secure a note of $3000, made by and to the same parties. Later on, in the same year, it appears Ezra H. Martin became and was involved in financial difficulties. His indebtedness was not very large, but some of his creditors became very persistent in their efforts to collect their respective claims. Attachment suits were commenced by one or more of his creditors, and the writs levied upon this land in controversy as the property of the attachment debtor, notwithstanding the fact the title of record was in the name of his wife. Other creditors undertook to secure their claims, and one of them had a petition prepared, and perhaps filed in the United States Court, to cause the common debtor to be placed in bankruptcy. In consequence of these legal proceedings, it seems the business of Ezra H. Martin, which was that of a contractor and builder, was so much interrupted he could not prosecute it successfully or profitably. Negotiations were entered into with his creditors, with a view to adopt measures to give him relief. Accordingly, at a meeting of his creditors called for that pur-

pose, it was agreed that Martin should cause these lands to be conveyed to a trustee, to be agreed upon, for the benefit of his creditors, and that such trustee should have power to sell the lands and personal property to be thereafter included in a deed of assignment to be made by Martin and his wife, and to distribute the proceeds, after first paying the expenses of the trust, among all of the creditors, ratably, in proportion to their respective claims, and if any surplus should remain, it was agreed it should be paid to Ezra H. Martin. In consideration of that agreement on the part of Ezra H. Martin, and on his performing the same, his creditors bound themselves to "release and forever discharge the said Ezra H. Martin, his heirs, executors and administrators, of and from all debts, demands, actions and causes of action which they may have, in law or equity, or which may result from the existing state of things, from any and all contracts, liabilities, doings and omissions, from the beginning of the world to this date." This agreement was signed by the creditors and by Ezra H. Martin, but not by his wife. It bears no date, but it was evidently made about the date of the deed of assignment, which bears date the 6th day of December, 1871. The party selected as trustee, to whom the property should be conveyed under the provisions of the agreement, was Henry B. Lewis, and accordingly a deed conveying these lands to him in trust, for the benefit of the creditors, was made, executed and duly acknowledged by Ezra H. Martin, and Pamelia, his wife, and was afterwards recorded in the county where the lands are situated. In the deed of assignment it is recited these lands are subject to the two trust deeds above mentioned, to secure certain indebtedness to George H. Clark, from whom Mrs. Martin had obtained a deed for the lands. Lewis accepted the trust created by the deed of assignment, and afterwards undertook to execute it. As before noted, Mrs. Martin was not a party to the agreement between her husband and his creditors, but it was copied into the deed of assignment, and

42—116 ILL.

in that way she made it declare the terms of the trust upon which she was willing to convey the property to the trustee.

Conceding the lands were the property of Mrs. Martin, as it is insisted they were, the agreement of the creditors to release and discharge her husband from all liability to them was a sufficient consideration to support the deed of assignment as to her. Construing the agreement and the deed of assignment together, it would seem the true construction is, that Mr. and Mrs. Martin had parted with their entire interest in these lands, whatever that may have been, and thereafter the creditors had no claims whatever against Ezra H. Martin, and looked only to the trust property for the satisfaction of their respective claims. All the possible interest the grantors could have remaining in the lands after the making of the deed, was the covenant that any surplus that might remain after all the creditors had been paid, should be paid to Ezra H. Martin. After the making of the deed they had no interest whatever in the lands, nor any interest in the execution of the trust, if no surplus should remain. There is some conflict in the evidence as to the amount of debts owing by Martin, but it is shown he owed a sum large enough, when added to the amount secured on the lands, to more than exhaust their utmost value, so that it would seem the grantor could never have any interest even in the execution of the trust, if the deed of assignment was valid and binding on the grantors.

After the making of the agreement and the deed of assignment, all legal proceedings that had been instituted against Martin were abandoned, and thereafter the creditors made no claim whatever against him on account of what he may have owed them. He was as completely discharged from all claims of the creditors who had signed the composition agreement, as though they had been paid in money. Efforts were made by the trustee and some of the creditors to effect a sale of the interest the trustee had in these lands, for the benefit of

the creditors, as provided should be done.   No sale was made of the lands until the following summer, when the interest the trustee had in the property was sold to George K. Clark, for $12,000, but out of that sum was to be deducted the amounts due on the trust deeds before mentioned, and all taxes that Clark may have paid to preserve the liens of his trust deeds, and the balance was to be paid in one and two years, with eight per cent interest.   Accordingly, on the 13th day of August, 1872, Lewis and his wife, by quitclaim deed, conveyed all of the lands to George K. Clark.   On the day of the making of the deed, Lewis was about to go East, and did not have time to ascertain how much would be coming from Clark.   It was thought it would be about $3000.   A brief memorandum of the terms of the sale was made, and signed by Clark, and at the same time he gave Lewis his note for $3000, payable at one day after date.   It was understood, however, that so soon as practicable the parties would ascertain the exact amount to be paid by Clark, and for that sum he was to give the trustee his notes, payable in one and two years, with interest.   It was also understood that Clark was not bound to secure the amount to be paid by him, otherwise than by giving his promissory notes.   The trustee claims he had the consent of the creditors to make the sale to Clark at the price he did, and to take his notes without sureties or other security.   As to this fact in the case the evidence is conflicting.   This branch of the case may be remarked upon further on.   The title thus acquired by Clark seems to have remained in him until the 11th day of March, 1873, when he, his wife joining with him, conveyed a part of the lands to Sidney P. Walker, in trust, to secure the payment of his note to the Globe Insurance Company, for $4000, with interest at eight per cent per annum.   On the same day Clark and wife conveyed the residue of the lands to the same trustee, to secure his other note to the Globe Insurance Company, for $3000, with interest at the rate of eight per cent.

per annum. These trust deeds were regularly acknowledged and recorded in the proper county.

Subsequent to these transactions the original bill in this case was filed by Pamelia Martin. There is nothing in this record that shows the date of the filing of the bill, but it was to the August term of 1873. The object of the original bill was, first, to have the deed of assignment to Lewis set aside and held for naught, on the ground the real estate embraced in it belonged to complainant as her separate property, and that the deed had been wrongfully obtained from her; and second, to have the deed made by Lewis and wife to Clark set aside because it had been made in violation of the trust. To the original bill, George K. Clark, Henry B. Lewis, Ezra H. Martin, the husband of complainant, and the creditors who had signed the composition agreement, were made defendants.

On the 13th day of August, 1874 George K. Clark, his wife joining with him in the execution, made another trust deed on the same lands, by which he conveyed the same to Alexander McCoy, in trust, to secure a note of $40,000, made by George K. Clark, payable to his own order. This note was indorsed by Clark, and delivered to the Globe Insurance Company.

A demurrer to the original bill having been sustained, complainant obtained leave to, and did on the 21st of October, 1874, file an amended bill, in which the contents of the original bill were restated and some new matters alleged. So far as anything contained in this amended bill may be necessary to an understanding of the decision to be rendered, it will be stated in the brief discussion that is to follow upon the merits of the case. To this amended bill the Globe Insurance Company and Sidney P. Walker were made defendants. On the 12th day of February, 1877, a stipulation was signed by counsel to change the venue of the cause from the circuit court of Iroquois county to the circuit court of Cook county. The

cause then passed from the docket of the circuit court of Iroquois county, but the record was never sent to the county to which the venue had changed. Nothing further was done in the case until November 24, 1882, when an order was made reinstating the case on the docket of the circuit court of Iroquois county. On the 13th day of December, 1882, a supplemental bill was filed by the original complainant, in which she stated that on the 26th of October, 1877, in the District Court of the United States, George K. Clark was adjudged a bankrupt, and afterwards, on the 2d day of July, 1881, he died, leaving his widow, Isabella H. Clark, as his sole legatee. By that amendment to the bill, the assignee of Clark, and his widow, and perhaps his heirs at law, were made defendants.

On the 6th of February, 1883, Pamelia Martin, the original complainant, died, and her heirs at law, the present complainants, obtained leave to prosecute the suit on their own behalf, and to file a supplemental and amended bill, which they did on the 23d day of March, 1883. Some of the allegations of this bill introduce new matters for the first time into the case, and so far as they are important they will be noticed in the sequel. On the 4th of March, 1884, the death of Sidney P. Walker was suggested, and his heirs made defendants. At the March term, 1884, of the circuit court of Iroquois county, the then presiding judge of that court, having been of counsel in the case, of his own motion changed the venue of the cause to the county of Vermilion, and the record was accordingly transmitted to the circuit court of that county. On the 20th of February, 1885, Abner C. Harding, by his solicitor, George F. Harding, made application to become defendant in the cause, and on the 4th of March, 1885, his application was allowed. The transcript of the record contains what purports to be an amended and supplemental bill, filed as of the date of the 13th of April, 1885, by the present complainants, but it does not appear to be signed

by either of the complainants, or by any solicitor for either of them. It seems the notes made by George K. Clark to the Globe Insurance Company came into the hands of Abner C. Harding, and, after answering the original bill, he filed a cross-bill, in which he alleged the execution of the notes by Clark to the insurance company, that by indorsements thereon he became the owner of them, and asks the foreclosure of the trust deeds by which they were secured. A number of the persons made defendants, among whom was Isabella H. Clark, the widow of George K. Clark, deceased, filed answers, in which they disclaimed any interest in the subject matter of the suit, and asked to be hence dismissed. The other defendants, both to the original, amended and supplemental bills, and to the cross-bill, answered the same, but as their answers are not under oath they are not important, except as they may serve to put the matters alleged against them at issue, and it will not be necessary to state the contents of any of them, further than to say, some of defendants most interested in the lands, in their answers insist upon *laches* of complainants as a bar to relief in any event.

If the decree of the circuit court dismissing the original, amended and supplemental bills can be sustained, as it is thought may be done, that would dispose of the whole case, so far as the parties assigning errors on this record are concerned. It is a matter of no interest to them, if they can obtain no relief on their bills, what decree may be rendered on the cross-bill of Harding, as between the heirs of Clark and his mortgagees, and that branch of the case will not be further considered.

The validity of the deed of assignment, so far as it affected the rights of the original complainant, Pamelia Martin, is challenged principally on the ground she was not informed as to all the facts concerning her husband's indebtedness, and that she had no legal advice as to her rights in the premises, and therefore was overreached in the transaction by the

persistent efforts of the creditors to collect their claims off her husband. It is alleged if she had known the extent of her husband's indebtedness she would not have made the deed of assignment. In the supplemental bill filed by the present complainants, it is charged the making of the deed of assignment was procured by the fraudulent conduct of George K. Clark, combining with some of the creditors, to secure the making of the deed for their personal benefit. The evidence in this record has been examined with care, and it is not perceived it sustains either ground upon which the right to relief is based. There is very little evidence in this record, other than the testimony of Ezra H. Martin, the husband of the original complainant, that tends even in the slightest degree to impeach the fairness of the making of the deed of assignment. The deposition of Mrs. Martin was taken, as well as that of Mr. Clark, to be used as evidence on the trial, but both were lost before the case came to a hearing. Since their depositions were taken and lost, both Mrs. Martin and Mr. Clark have died, so that the record does not contain the testimony of either of them. There is nothing that shows, with any degree of certainty, that Mrs. Martin was overreached, either by her husband or any of his creditors, or any one else, in the matter of procuring from her the execution of the deed of assignment for the benefit of her husband's creditors. There was a controversy whether the lands embraced in the deed really belonged to her or to her husband. They had been attached as his property, and the creditors were about to try the question of ownership. Of this fact she was made fully acquainted. When a compromise was proposed, by which her husband was to be released and discharged from the claims of the creditors that were pressing him so hardly, she was fully informed of the terms agreed upon. In that respect there was no imposition practiced upon her. Whether the exact amount of her husband's indebtedness was stated to her, is matter of little consequence, for an error in that

respect would hardly vitiate the transaction, if otherwise fair. The most damaging testimony is that given by Martin in relation to the conduct of Clark in procuring the making of the deed of assignment and the composition agreement. It will be observed the charge, the deed of assignment and the composition agreement were procured by fraud on the part of Clark, was first made by the present complainants in their amended and supplemental bills. It was never made by the original complainant, either in her original bill or in any of her amended bills. Nor was it ever made by any one until since the death of Clark. These facts are admitted by counsel in his argument, and the force of the objection is freely conceded, that the charge, if made at all, should have been made in the lifetime of the party alleged to have been guilty of fraudulent conduct. But this was not done. Since this charge was not made until after the death of the alleged guilty party, it has become more difficult to defend against it. What Clark, if living, would say in respect to it, of course can not now be known. He never had an opportunity to deny the fraudulent conduct with which he was charged. It is probable, if living, he would deny most, if not all, that Martin alleges against him that so seriously affects his character both as a lawyer and as a citizen. Counsel is frank enough to concede that if the charge had no other support than the testimony of one man, it should not be allowed a place in the case. The testimony of Kimmey is all the evidence, other than the testimony of E. H. Martin, that lends the slightest support to the accusation of fraudulent conduct on the part of Clark; but that, when carefully considered, does not seriously tend to impeach the integrity of the transaction. It seems Kimmey was the legal adviser of Martin, and perhaps his wife, concerning their difficulties. Martin, he says, wanted an older lawyer, and it was agreed Clark should be associated with him. The witness says Clark advised the making of the deed and the composition agreement. Suppose he did;

it is not certain, in view of what subsequently transpired, that was not the best measure that could have been adopted for the interests of both Martin and his wife. After one of these consultations this witness says he told Martin that Clark "had gone back on him." Notwithstanding this notice, Martin still advised with Clark, and it must have been after this interview that this witness made the draft of the papers that were subsequently executed by Martin and his wife to complete the assignment for the benefit of creditors. This witness further says he always insisted that Mrs. Martin had a clear right to the farm, and could hold it in spite of any or all of her husband's creditors. It is true, he says that he and Clark differed in regard to Mrs. Martin's rights, and as to the best policy for Martin to pursue. Clark undoubtedly advised the making of the agreement with the creditors and the deed of assignment. It may be that Kimmey advised against both measures. This shows most conclusively the matter was thoroughly considered, and the arrangement entered into after the most mature deliberation and investigation. And now, after the lapse of so many years, and since the death of the party implicated, the transaction should not be set aside unless it is shown by the clearest and most satisfactory evidence it was fraudulent. That has not been done.

Passing now to consider briefly the other branch of the case, it is seen that since the death of his wife, Ezra H. Martin has conveyed to the present complainants any interest he may have had in the premises. It is also made to appear that most, if not all, of the creditors have assigned their respective claims against Martin to complainants. It is now said the present complainants stand in the shoes of the creditors, and as they claim under them, they hold all the equities that existed in their favor before or under the assignment. Conceding the correctness of the position taken, it is plain the creditors could not have the deed of assignment set aside that they had procured to be made for their own benefit. But

could they have the deed from the trustee, Lewis, set aside? Many of the creditors consented to the making of the sale to Clark as it was made. Lewis thought he had the consent of all the parties in interest to make the sale to Clark, but as to some of the parties he may have been misinformed. But be that as it may, many of the creditors, and some of the principal ones, did consent to the sale, and they are estopped to complain it was wrongful. What rights did these creditors have who did not give their consent to the sale to Clark? It would have been their privilege, no doubt, to have filed a bill to set aside the sale to Clark, if fraudulent, and to compel the trustee to go forward and further execute the trust in their favor, or perhaps to have had the trustee removed and one appointed who would have more faithfully executed the trust. But this bill was never framed with a view to compel the trustee to execute the trust. Its purpose in the first place was to cancel the whole arrangement as a fraud upon the wife of the debtor, and that she might have the property back free from the claims of her husband's creditors, and that she might have all subsequent incumbrances removed as a cloud upon her title. This it is obvious could not be done, either in favor of the original complainant or in favor of the present complainants. The utmost that either the party entitled to the surplus or the creditors could do, in case the trustee was wasting or mismanaging the trust property, would have been to compel him, by bill, to observe his duties to the *cestuis que trust*, or have had him removed for unfaithfulness. Had it been shown, by bill, in apt time, the sale to Clark was fraudulent, or an improvident one, no doubt the court would have set it aside, and ordered a re-sale for the benefit of the creditors, or the parties interested in the surplus. In the original bills Mrs. Martin never asked to have the trust executed by the trustee, that she might have the benefit of any surplus that might remain after the payment of creditors. On the contrary, she always demanded the deed of assignment and all

subsequent conveyances of the property be set aside as a fraud upon her rights, and that she might have the property back free from all subsequent incumbrances. If the bill, as now amended, could be treated as a bill to enforce, in favor of the present complainants, the rights creditors may have had in the trust property, it comes too late. Such *laches* has been suffered as would bar any relief. Conceding the sale by the trustee to Clark was either fraudulent or improvident, no relief could be had against it in favor of the creditors or other persons interested in the trust property, unless a bill for that purpose had been brought without unreasonable delay. That was not done.

There was no error in the decision of the circuit court dismissing the original, amended and supplemental bills for want of equity, and its decree in all respects must be affirmed.

*Decree affirmed.*