# GEORGE F. HARDING ET AL.
## v.
## HENRY S. DURAND.

*Mortgages—Foreclosure—Limitations—Tax Title—Assignment—Evidence—Error and Appeal—Improper Parties—Practice.*

1. Persons who, though not necessary or proper parties, are made plaintiffs in error without their knowledge or consent, will be dismissed from the suit at the costs of their co-plaintiff, and errors assigned on their behalf will be stricken out.

2. Plaintiff in error can not assign errors for his co-plaintiffs who have no interest in the suit; nor can he complain of errors that do not affect him.

3. Objections for want of parties can not be made for the first time on appeal.

4. The grantee of mortgaged premises, in the absence of his open declaration that he holds adversely to the mortgage, will be treated as holding subordinate to it, until it is barred by the statute of limitations.

5. The grantee of mortgaged premises can not acquire a title superior to the mortgage, by allowing the land to be sold for taxes and bidding it in.

6. The statute of limitations does not run against notes secured by a mortgage while the mortgagor resides out of the State.

7. Recognition of the debt by the mortgagor, and promise to pay, will take it out of the bar of the statute though the time of limitation has expired.

8. In a suit to foreclose mortgages, this court holds that complainant was the owner of the mortgages; that they were not barred by the statute of limitations; that an assignment claimed by defendant from one other than complainant was a nullity; and that defendant acquired no title in the land superior to the mortgage.

[Opinion filed May 28, 1890.]

In ERROR to the Circuit Court of Winnebago County; the Hon. WILLIAM BROWN, Judge, presiding.

Messrs. WM. J. AMMEN and GEORGE F. HARDING, for plaintiffs in error.

Mr. CHARLES A. WORKS, for defendant in error.

C. B. SMITH, J. A preliminary question affecting the parties to this suit first requires our attention. A motion is made in this court by Mrs. Frank N. Davis and Mrs. Abbie N. Dennis, administratrix of her husband's estate, who are both made plaintiffs in error, to be dismissed out of this suit at the costs of their co-plaintiff, George F. Harding, and also to strike from the record all errors assigned for them or on behalf of the estates of their respective husbands. This motion is supported by the affidavits of both Mrs. Davis and Mrs. Dennis, disclaiming any desire to prosecute this suit and disclaiming any interest in the controversy or in the property which is the subject of litigation, and declaring that they were made parties plaintiff to this writ of error without their knowledge or consent. This motion was taken under advisement and reserved to the hearing of the case on its merits. In addition to the affidavits we have examined the record to ascertain whether Mrs. Davis and Mrs. Dennis, or either of them, were properly made plaintiffs. Upon examination of the record we fail to find that either of them or the estates of their respective husbands have any proper connection with this litigation such as to make either of them necessary parties to the suit. Both the estates have been long settled and the administrators discharged. We think, therefore, they were improperly made plaintiffs in this suit without their knowledge or consent and without having any interest in the subject-matter of the suit, and that they should be dismissed from the suit at the cost of their co-plaintiff, George F. Harding. It follows that the errors assigned on behalf of these two plaintiffs must also be stricken out. The allowance of this motion also eliminates the question of the competency of Henry S. Durand as a witness against George F. Harding, who claims to be prosecuting this writ of error in the dual capacity of administrator of Frank N. Davis, deceased, as well, also, as in his own right. The record discloses that he is no longer the rightful administrator of the estate of Frank N. Davis, and even if he was, the estate has no kind of interest in this suit for Harding to prosecute or defend. It is very clear from the record that this con-

troversy is one exclusively between George F. Harding in his own right and Henry S. Durand. Harding has no right to involve these estates in costly litigation against their protest and when they have no earthly interest in the suit, simply to enable him to obtain such an advantage over his real antagonist, Durand, as will prevent Durand from being a witness in his own behalf. Even if Mrs. Davis and Mrs. Dennis were retained in this suit it could serve Harding no useful purpose nor prevent Durand from being a witness, for the simple reason that neither of their estates have any interest in the land either to defend or prosecute.

It is also objected by the plaintiff in error that there was a want of proper parties below, in that the heirs of Frank N. Davis and of Spofford C. Field were not made parties defendant below. So far as this objection relates to the heirs of Field, it is sufficient to say that Field had sold all his interest in the land long before this proceeding was begun. Field and his wife sold the land to S. F. Cooper on the 28th day of May, 1860, five years after he executed the mortgages in controversy in this suit, by warranty deed. Of course this deed was subject to the mortgage, but it left no title in Field to leave to any of his heirs, and so they had no interest in the land. By various mesne conveyances, the title to the lands finally reached George F. Harding, appellant, and in the line of these conveyances was a tax deed to Purple, which also inured to the benefit of Harding by a conveyance, through Purple and others of his grantors, so far as it had any effect. The only title which Frank N. Davis appears to have ever had was by virtue of a contract from appellant Harding, agreeing to sell the land to Davis for a large sum of money and to make him a deed for the land, upon his paying the full amount of the purchase money. This was a mere contract to sell, agreeing to convey to Davis by deed, upon his fully complying with the conditions of the contract. The contract had a provision in it providing that in case Davis failed to make his payments promptly when due, then all his rights under the contract should be forfeited. Davis never paid for the land and Harding never made him any deed for it.

Harding v. Durand.

Davis made no defense and the bill was taken as confessed against him. He made no claim under his contract of purchase. His wife now disclaims any interest in the land. The execution of this contract of sale to Davis, upon condition that he pay for it, and that it should be forfeited if he failed, does not create such an interest in him as makes his heirs necessary parties, and especially, when the proof is that a deed was tendered and payment demanded of him and refused. There is neither any proof that Davis had any heirs except his wife, and she was made a party after the death of her husband, and she is not complaining. Appellant can not assign errors for his co-plaintiffs who had been dismissed out of this case, nor can he complain of any alleged errors which do not affect him or his title. Martin v. Clark, 116 Ill. 654 ; Agnew v. Fults, 119 Ill. 296 ; National Bank v. King, 110 Ill. 254.

This contract to sell, from Harding to Davis, was dated October 10, 1867, and without proof that it was complied with by Davis would not be sufficient to establish any such right in Davis as to make him or his heirs necessary parties to the suit after this long lapse of time, and especially after proof that he refused to comply with it. But there is another fatal objection to this claim, now set up for the first time, of a want of proper parties. It was not made below and it can not be made here for the first time. Oliver v. Cochran, 19 Ill. App. 236 ; Farmers' Bank v. Sperling, 113 Ill. 273.

Objections which can be removed (if well taken) on the trial, by amendment, must then be made. Parties can not be permitted to lie by and speculate on chances, and then when beaten, spring that class of objections for the first time in the Appellate Court. Bowden v. Bowden, 75 Ill. 111.

Having disposed of these preliminary questions, we come now to consider the case upon its merits.

This was a proceeding upon two bills in chancery to foreclose two mortgages, each securing a note in the sum of $2,000, dated Beloit, Wisconsin, May 28, 1855, payable five years from February 10, 1855, to the Racine, Janesville & Mississippi R. R. Co., with ten per cent interest annually from

February 10, 1855. The notes were executed by Spofford C. Field, and the mortgages by him and his wife, Martha A. Field. The interest was paid on these notes, as appears by indorsement, until February 10, 1857. The bills were filed on the 16th day of August, 1878.

Spofford C. Field and, his wife, George S. Harding and several other persons, including the railroad company (alleged to have some kind of interest in the land), were made parties defendant and summoned into court. Default was taken as against Field and his wife, and against the railroad company, Frank N. Davis and others, who have disclaimed or who have, in fact, no interest in the land. The railroad company to whom the notes were originally made, had sold them, and Spofford, the maker of the notes and mortgage, had sold and parted with all his interest in the land, as before stated, and at the time of the trial, was dead. William P. Dennis disclaimed any interest in the land.

No claim had ever been made by any of the many defendants to this suit, since its commencement, to the land described in the mortgages, except George F. Harding. He alone answered the bill and set up and relied upon a number of defenses below, and failing there, now appeals to this court and relies upon them here.

There is no controversy about the execution of the notes and mortgages; that is admitted. Appellant Harding denies in his answer, 1, that there was ever any interest paid on these notes; 2, denies that his title to the land is subordinated to the mortgages; 3, denies that complainant, Durand, is the owner or holder of the notes and mortgages, or that they were ever sold or assigned to him; 4, avers that Field and his wife were induced to execute the notes and mortgages by false and fraudulent representations, and that the notes and mortgages are fraudulent and void and not a lien on the land; 5, avers that he became the owner in fee of the land, by virtue of various mesne conveyances from Spofford and wife, and by virtue of a deed from the State (the tax deed) to himself, and that being so the owner in fee of the land he purchased and took an assignment to himself from the railroad

Harding v. Durand.

company of these notes and mortgages for a valuable consideration, and that by operation of law the mortgages thereupon became merged in the fee. He avers that he took this assignment under the hand and seal of the president of the railroad company in good faith, and without any notice that the railroad company had, prior to such assignment to him, assigned and sold the notes to any other person; 6, alleges that he has been in possession of said land by himself, his vendors and tenants, by actual residence thereon, under a connected title deducible of record, ever since the year 1863, and paid all the taxes thereon, and has claimed the same adversely to all other persons during that period of time, and that said occupation and possession has been under claim and color of title acquired in good faith, derived by a series of conveyances from the State, and also from Spofford C. Field, beginning in the year 1862, by conveyance of warranty mortgage to J. S. Purple, and also through a series of agreements and conveyances, all of which became vested in respondent in 1864; 7, he pleaded and relied upon the statute of limitations of the States of Illinois and Wisconsin.

Durand filed replications, and on the 20th of May, 1879, the court ordered the two cases to be consolidated, and referred them to the master to take proof and report.

After the case had been in the hands of the master from May, 1879, to February, 1888, nearly nine years, the case was reported back to the court and the cause heard and decree rendered for complainants, foreclosing the two mortgages for the sum of $16,396.66, and from that decree this writ of error is prosecuted and many errors assigned.

The record is quite voluminous, containing nearly 500 pages.

The complainant made out a *prima facie* case by introducing his notes and mortgages, and was entitled to a decree, unless the defendant established some of his defenses set up in his answer.

We have been favored by very exhaustive and elaborate arguments by the learned counsel engaged in the case. We shall consider the defenses made as nearly in the order above given as convenience will permit.

It is first denied that there were any payments of interest on the notes, but there is no proof to support this denial, and the payments of interest are indorsed on the back of the notes up to 1857. The third ground of defense is that Durand is not the owner of these notes and mortgages. We will consider this and the fifth ground of defense together. The fifth claim made by the defendant in his answer, is that he, himself, is the owner of the notes and mortgages, by purchase and assignment of and from the railroad company, to whom the notes were originally given. These two defenses both question Durand's possession and ownership of the notes.

Durand himself testifies that he bought these notes and mortgages of parties in the East, to whom they had been sold by the railroad company, in order to raise money to build its road. That he bought them in 1866 from a man named Cornell, as he thinks. He swears that since that time he has owned and had possession of these notes and mortgages, and that no part of them has ever been paid since 1858; that he applied several times to Spofford C. Field in the years 1875–6–7, for payment, and that Field often said he hoped soon to be able to pay them. He further testified that Field had lived outside of Illinois for about ten years since he bought the notes, sometimes in the Western Territories and sometimes California; that he had written Field frequently in California about the matter before seeing him finally in Chicago, and had made personal demand for payment; testifies that he, himself, had, as secretary of the railroad company, sold these and other securities to parties in the East to raise money to build the road, and that James H. Knowlton never had any authority to release these mortgages; says he bought and paid for the notes and mortgages. The mortgages were filed for record September 7, 1855.

Allen testifies that he talked with Field about the time the suits were begun about these notes, and that Field told him he was not in a condition to pay them then and regretted that they must be foreclosed, and said they had never been paid, and that they were given for a valuable consideration. He swears further that the railroad company sold these notes and mort-

gages before maturity, and that the company had never paid them, and that the company retained no interest in them after it sold them.

Allen was a director in the railroad company when the notes and mortgages were given.

Dickson testifies that he has been secretary and treasurer of the railroad company, and that James H. Knowlton was president from 1865 until his death, three or four years ago, and that a search of the records of the company fails to disclose that Knowlton ever had any authority to release mortgages for the company, and, further, that the company has never owned any such mortgages as these in suit since he has been secretary, since 1865, to his knowledge.

This proof of ownership of the mortgages and notes on behalf of Durand is met by Harding by introducing a written contract, dated April 25, 1868, executed by the Racine and Mississippi Railroad Company, purporting to release the lands in the mortgages described to Geo. F. Harding, and also assigning and transferring the mortgages described in this suit to him. This paper was executed by James H. Knowlton, president of the company. A third mortgage was also introduced by appellant, which had been executed by Field and his wife to J. L. Purple long after the one in suit. Mrs. Martha Field, wife of Spofford Field, also swore that Hillman S. Cooper bought these same mortgages of the railroad company; that she saw him have them. She swears that she thinks Cooper kept them some time and then parted with them, but she can not tell how or where.

Plaintiff in error testifies that he was assured by the president and other officers of the road that they had never parted with these notes and mortgages, and that they repeatedly assured him that the above transfer was a good and valid release to him of these mortgages. As to what became of these two notes and mortgages after they were executed, and into how many hands they went first and last, it is very difficult to tell. There is a great deal of uncertainty and confusion in the evidence about it. But in this confusion and conflict of testimony, Durand is found in the possession of them, which

is strong presumptive evidence that he is the lawful and right-ful owner. The evidence on that point for the defense is very inharmonious and unsatisfactory.

In this confusion and doubt, resulting largely, no doubt, from the long lapse of time, we can not say the court was not justified in finding that Durand was the owner of the notes and mortgages, and that all subsequent deeds and conveyances must be and were subject to the incumbrances of these mortgages. They were recorded shortly after they were made and long before Harding got any title. But aside from this he was fully advised of the existence of the mortgage when he bought the land from Purple and when he took his release from the railroad company. His second defense, therefore, falls with the third and fifth.

His fourth reliance in his answer is that the note and mortgage were obtained from Field and his wife through fraud.

There is not a particle of evidence to support this charge, but on the contrary it is clearly proven that Field got value received for his mortgages, and that they were valid and *bona fide* debts.

His claim that the mortgages merged in the fee in his hands, fails, because he fails to prove that he ever held the notes and mortgages.

Plaintiff in error claims title by possession under deeds of various kinds and in good faith, paying taxes under a title deducible of record since 1863, and that during all that time he has claimed adversely to all the world. Aside from the tax deed, this possession under various deeds for this long period would not avail as against a mortgage which had not been barred by the statute of limitations, because all such purchases and all such possessions must be subject to the lien of the mortgage so long as the right of action exists under it. The grantees of Field could hold no better position as against these mortgages than Field himself. In the absence of an open declaration on the part of the grantee of the mortgaged premises, that he holds hostile to the mortgage and repudiates any obligation under it, the law will treat him

as holding under and subordinate to it until the bar of the statute of limitations runs against it. It is his duty to keep the taxes paid and to protect the mortgage.

He can not let it be sold for tax and bid it in and thus get a title superior to the mortgage. The law treats all such purchases of the owner of the fee as simply a payment of the taxes. Medly v. Elliott, 62 Ill. 532.

Had, then, either the statute of limitations of Wisconsin or of Illinois run against these notes and mortgages? The statute of Wisconsin seems to have been six years, and in Illinois sixteen years. This depends upon whether Spofford C. Field remained a resident of either of these States during that length of time.

Both statutes have an exception or saving clause that stops the running of the statute during the absence from the State of the maker of the note and mortgage. We are satisfied from the proof in this case that after the execution of these notes and mortgages, Spofford C. Field was not in Wisconsin over three years continuously, and we think very much less than that, and that his stay in Illinois was not to exceed three or four years. He seems from the testimony of his wife and son, as well as other witnesses, to have been a wanderer, spending the larger part of his time in California and the Western Territories, while for a considerable part of this time his wife and son lived in Chicago; he was not with them and his home was not there. The statute kept these mortgages alive for the full period of sixteen years in this State and six years in Wisconsin, after he returned to the one State or the other, that being the limitation for promissory notes during that time in these two States. Medly v. Elliott, 62 Ill. 532; Hagan v. Parsons, 67 Ill. 170; Blackburn University v. Weer, 21 Ill. App. 29.

But, aside from the statute of limitations, the proof is that during the years of 1875-6-7, up to within a year before the commencement of this suit, Spofford C. Field, the maker of the mortgages, acknowledged the debt and showed a clear intention to pay it, and expressed the hope that he would soon have the means to pay it, and regretted the necessity of a

probable foreclosure. This recognition and promise to pay the debt would take it out of the statute of limitations, even if they had run the full time to bar the debt. Wooters · v. King, 54 Ill. 343.

As to the tax title set up in the answer, even if the plaintiff could be permitted to avail himself of any such title accruing during the lifetime of the mortgage (which we hold he could not), still the proof fails to show any valid tax title which could be used for any purpose, except, perhaps, to show color of title in cases where that could be of any use.

Taking the evidence altogether, including Harding's contract of sale to Davis and his very peculiar assignment and release of the mortgage and notes from the railroad company, whereby he procured the release and assignment to himself of these large mortgages for one or two hundred dollars, indicates to our minds that he was willing to take the chances of a law-suit, if he got the claim of the railroad out of the way, and hardly establishes the averment in the answer of a purchase and holding in good faith.

No matter how much authority Knowlton had as the chief officer of the company to assign notes and release mortgages, it is perfectly clear that he could not release a mortgage nor assign a note which the company had sold to another. The assignment, taken by Harding on a separate piece of paper, of a note and mortgage in the hands of somebody else, assigned before maturity for a valuable consideration, could not affect the title of the real holder of the note and mortgage. Such an assignment as against a stranger, for value before maturity, was a mere nullity.

The importance of this case, involving, as it does, a large sum of money, and the zeal and earnestness with which it has been pressed upon our attention, has induced us to give the case a careful and patient examination, and after such examination we have been unable to find any error in the record. We think the evidence justified the finding of the Circuit Court and supports the decree, and the decree of the Circuit Court will therefore be affirmed.

*Decree affirmed.*