## LUTHER R. LAMB *versus* AMES FOSS & *al.*

Where a mortgage of lands was made to S. F. and wife, during their lives, on condition that the mortgagor should " render and deliver unto the said S. F. and wife, and survivor of them, one third part of all the produce, which may be raised on said farm, for and during the said term annually, or support and maintain the said S. F. and wife, whichever way they or either of them may elect, on said farm for said term ;" — *it was held,* that the mortgagor was entitled to the possession until the condition should be broken.

The mortgagor, therefore, in such case must be considered as the actual tenant of the freehold, although his right to the possession was liable to be defeated by a failure to perform the duties required of him by the condition.

If the occupant admits in writing, that the land on which he lives belongs to the proprietor, it is a voluntary submission to that title, and a surrender of any rights acquired by prior possession; and from that time, he must be considered as the occupant of the land in submission to that title, until there be proof of some new act of disseisin; and by his subsequent possession, he will not acquire any title to the soil, or to the improvements upon it.

The conveyance of the land to another, where the deed has not been recorded, and where no change in the possession has taken place, is not evidence of a new disseisin.

WRIT of entry demanding against Ames Foss and Silas Foss fifty acres of land in Winslow. Ames Foss pleaded a special non-tenure on which issue was joined. Silas Foss disclaimed the west half of the lot, and defended the other half. The disclaimer was accepted by the plaintiff, and issue joined as to the part defended. He also put in a claim for betterments, and the demandant put in a claim to have the value of the land estimated with the improvements.

The demandant read in evidence Robert A. Cony's quit claim deed of the land demanded to him, dated July 23, 1838. Ames Foss read in evidence Silas Foss' deed of the premises demanded to Ames Foss, dated Nov. 6, 1837, but not recorded until August 6, 1839, and Ames Foss' deed of the same date, recorded at the same time, to Silas and his wife and the survivor, to have and to hold the same during their lives and the life of the survivor, on condition that he should support Silas Foss and his wife during their lives. The demandant proved that the premises were set off in 1816, on an execution in favor of Samuel Cony, against Joseph T. Wood; that Sam-

uel Cony died in 1835, and his son, R. A. Cony, was appointed his administrator. R. A. Cony testified, that he sold this lot as administrator, and procured one Brooks to bid it off for him; that he gave a deed as administrator to Brooks, who afterwards gave him a deed. He also testified, that he found a paper among his intestate's papers, signed by Silas Foss, dated in 1829, in which he promised to pay the taxes on this lot, No. 1, belonging to Samuel Cony. The demandant also proved that Samuel Cony was taxed that year for lot No. 1, and that Silas Foss told the collector that he would pay the tax on lot No. 1, and did so pay, saying he paid it in consequence of his agreement with Samuel Cony. The condition of the mortgage deed from Ames Foss to Silas Foss and wife was: — "that if the said Ames render and deliver unto the said Silas and Sarah, and survivor of them, one third part of all the produce which may be raised on said farm for and during the said term annually, or support and maintain the said Silas and Sarah, whichever way they or either of them may elect, on said farm for said term, then this deed shall be void; otherwise to remain in full force."

Silas Foss proved, that he had been in the notorious and exclusive occupation of the land for more than thirty years, having during all that time lived on the lot, and having fenced and improved it.

WESTON C. J. who presided at the trial, instructed the jury that the writing given by S. Foss to S. Cony was a recognition of Cony's title to the lot; that it amounted virtually to a lease; that the relation of landlord and tenant existed between them, Foss paying the taxes by way of rent; that his possession from that time ceased to be adverse; and that R. A. Cony's deed to the demandant passed the title of the land to him; that said Foss was not entitled to betterments; and that if A. Foss knew that S. Foss had acknowledged Samuel Cony's title, and gave a deed to S. Foss of the life estate, it was an act of disseisin, and he had not supported his plea of *non-tenure.*

The verdict for the demandant was to be set aside if any of the instructions to the jury were erroneous.

At May Term, 1842, it was agreed, that this case should be argued in writing, and the arguments were afterwards sent to the Court.

*Boutelle*, for the tenant.

1. Silas Foss conveyed the premises to Ames Foss, and on the same day Ames conveyed the same to Silas Foss and his wife to hold during their lives and the life of the survivor, on condition, that he, A. Foss, should support S. Foss and his wife during their lives, and so is not tenant of the freehold, and disclaims all right to the land till after the decease of S. Foss and wife. The demandant replies, that he is tenant of the freehold. It was proved that S. Foss, in 1829, agreed with Samuel Cony to pay the taxes on the premises, and that afterwards he did pay the same to the collector in 1831. The Judge instructed the jury, if A. Foss knew that S. Foss had acknowledged S. Cony's title, and then gave a deed of the life estate to S. Foss, it was an act of disseisin, and he had not supported his plea of non-tenure. Of this instruction of the Judge we complain. The substance and point of the plea is, that the tenant is not tenant of the freehold, the particular interest set forth in the plea not being by law traversable. The case does not show that the demandant ever made an entry on the land, claiming it; or that A. Foss was ever in the actual possession or occupation of the same. He had not then ever actually disseised the owner of the land. The question then is whether he had *constructively* so done; or in other words, whether by taking a deed of the land of S. Foss, and at the same time giving to him and his wife a deed to hold the same during their lives on condition that he would support them during their lives, he, A. Foss, at the same time, knowing that S. Foss had acknowledged Cony's title to the land, thereby *constructively* disseised the owner. S. Foss and wife owned the land during their lives, and S. Foss was the proper tenant of the freehold. A. Foss had only a reversionary estate after the death of S. Foss and wife. " A disclaimer in our practice is not unfrequently pleaded instead of non-tenure, and is considered as having the same effect." Jackson on Real Actions

99; Stearns, 202, 3.   Under our statute a plea of disclaimer is considered as substantially the same as a plea of non-tenure. Rev. Stat. c. 145, § 10.   "If the person in possession have actually ousted the demandant, or withheld the possession of the premises, he may, at the election of the demandant, be considered a disseisor for the purpose of trying the right, though he should claim therein an estate less than a freehold." This, it is supposed, is nothing more than the common law provision incorporated into the statute.   Where a man enters unlawfully on the right owner, he cannot qualify his own wrong by saying that he claims only a certain particular estate, but may, at the election of the owner, be treated as a disseisor and as having acquired the fee simple."   Jackson on Real Actions, 96, 7.   If the tenant hold over after the expiration of his term, it is a disseisin at the election of the landlord, and he may maintain a writ of entry.   But the case of A. Foss, it is insisted, is not embraced in the provision of our statute as above cited, nor within the principles of the common law in relation to disseisin by election.   He has not "actually ousted the demandant or withheld the premises," nor has he "entered unlawfully on the right owner," nor has as lessee held over. He has not had the actual occupation and possession of the premises.

2. It will perhaps be said that A. Foss, having knowledge that S. Foss had recognized Cony's title, and having given a deed to S. Foss of a life estate in the premises, was an act of disseisin at the election of the demandant.   It then becomes necessary to ascertain the situation of S. Foss in relation to the premises, and the extent and effect of what is said to be a recognition of S. Cony's title.   The case finds, that S. Foss had had exclusive and notorious possession of the premises for more than thirty years; that in 1829 he gave a writing to Cony by which he promised to pay the taxes on the lot.   In 1829, then, when this agreeement was made, Cony's right of entry had gone, and S. Foss had acquired a good title by a possession of more than twenty years.   Would such an equivocal writing as this, under such circumstances, have the effect to

divest his title thus acquired? It ought not to be so construed, unless it appears, that S. Foss did deliberately intend to give up all claim to hold the land, or even to claim betterments. Is the agreement to be construed an agreement to pay the taxes for one year only, or as continuing as long as he might continue to occupy? S. Foss had paid the taxes for more than twenty years before this time, and his promise to pay the taxes amounted to no more than what he had done every year for more than twenty years before. It was necessary for him to do it in order to preserve his rights as owner of the land. It was not then such a recognition of Cony's title as would purge the disseisin. Even a proposal to purchase of the owner, if not accepted, does not have this effect. *Small* v. *Proctor*, 15 Mass. R. 495, 499; *Blanchard* v. *Chapman*, 7 Maine R. 122; *Baylies* v. *Bussey*, 5 Maine R. 153; *Ewing* v. *Barrett*, 11 Pet. 41. In *Penniman* v. *Hollis*, 13 Mass. R. 429, the Court decided, that the plea of non-tenure could not avail a mortgagor of a reversion, living the tenant of the life estate, in an action brought by the mortgagee of the reversioner, and this on the ground of the peculiar relation existing between mortgagor and mortgagee; thereby admitting that but for this peculiar relation, the plea of non-tenure would have availed the tenant.

3. But the Judge instructed the jury, that this agreement created the relation of landlord and tenant. If it had this effect, it undoubtedly purged the disseisin. Of this instruction we also complain. The agreement, neither in its terms, nor by implication, amounted to a lease. It was a mere naked promise to pay the taxes. Cony might have supposed he had some interest in the land, and perhaps was apprehensive the land might be sold for non-payment of taxes, and S. Foss promised to continue to pay the taxes as he had done for twenty years before, not for Cony's benefit, but for his own. It does not appear, that Cony agreed that S. Foss might continue his possession, and take the rents and profits; and if the disseisin was purged, Cony might have sued him off the next day; and if the relation of landlord and tenant existed, Cony might have

sued and recovered in an action for use and occupation. A mere contract with the owner of land to raise a crop *on shares*, does not constitute a lease. 4 Kent's Com. 95. And if the disseisin of S. Foss was purged by the agreement, so that the demandant might maintain his action against him, it does not follow that A. Foss, even if he had been in possession, taking the rents and profits, would be liable in this action unless a previous entry had been made by the demandant and resisted by A. Foss. On this point the case of *Pro. of No. 6* v. *McFarland*, 12 Mass. R. 325, seems to be quite conclusive.

In the case of *Fox & al.* v. *Widgery*, 4 Maine R. 214, the Court decided, that where a disseisor took from the disseisee a release of all his interest in the premises, it was not in fact, nor was intended by the parties to purge the disseisin, or to operate a waiver or abandonment of the rights of the disseisor. The principle of this case, applied to the case at bar, shews, in a strong light, the inaccuracy of the position taken by the Judge.

4. The inquiry in this case was one of intention, whether the disseisin by S. Foss had been purged, or waived, by the subsequent conduct of the parties ; and as such it ought to have been submitted to the consideration of the jury ; more especially as the agreement was an exceedingly equivocal act. But the Judge took it away from the jury, and decided it himself. *Fox & al.* v. *Widgery*, above cited, and also *Tyler & al.* v. *Hammond*, 11 Pick. 193, 218. If then this agreement, did not purge the disseisin of S. Foss, and had in fact no effect on his rights, A. Foss's knowledge of this agreement could not make him a disseisor by giving a deed of a life estate in the premises to S. Foss and wife.

5. If S. Cony was disseised in his lifetime by S. Foss, though his administrator had a right to sell the land under a license, the purchaser could not maintain his writ of entry against S. Foss or A. Foss, unless he had previously entered on the land for the purpose of taking possession. *Willard* v. *Nason*, 5 Mass. R. 240. And though Brooks, who purchased the land of the administrator might have maintained such an

action after entry on the land, it is believed to be at least doubtful, whether Cony, who bought of Brooks, or the present demandant could, because nothing passed by Brooks' deed to Cony, or Cony's deed to the demandant, there being a disseisin existing at the time. But however this may be, it is certain the entry of Lamb was in operation for every purpose. His entry, to have been effective, must have been made with an intention to revest the title in him, or purge the disseisin of S. Foss and A. Foss, and this intention must have been indicated by actions or words accompanying the entry. *Robinson* v. *Swett*, 3 Maine R. 316.

*Wells*, for the demandant.

The question arises upon the instructions of the Court, whether Ames Foss was tenant of the freehold. Such facts only, in the case, as illustrate that question, are to be regarded.

If the deed of Ames is a deed upon condition, to be performed *by him*, the life estate having been conveyed to his father and mother, from caution for their better security, and the condition being subsequent, he clearly has the freehold. *Green* v. *Thomas*, 2 Fairf. 318. If he is a mortgagor, between him and the world, he is owner.

It might be considered, from what is stated, that Ames was in the actual possession ; and he claims no right, in the case stated, arising from the want of possession. There was nothing, therefore, for the Court to decide upon that ground. The same remark may be made in relation to the fact, whether there was an entry, before the suit, by the demandant.

If a disclaimer had been pleaded, under the statute in force when the action was commenced, upon the proof of possession by Ames, he would have been liable for costs. Stat. 1821, c. 59, § 20. He does not prefer to put in a plea, which should place his case upon a *denial* of possession. The argument of his counsel, in relation to a disclaimer, is inapplicable. The question he raises is, whether he has the freehold. By his plea, he does not deny he is in possession. He claims to own the fee, but does not wish to have his rights tested.

Silas's possession was not *adverse.* Cony's right of entry had not gone in 1829, because Silas was his tenant. He had not therefore acquired any title by possession. How long he had paid taxes we are not informed. He acknowledged the land was Cony's, in the paper found among Cony's papers ; and also said he paid the tax to the town in consequence of his *agreement* with Cony. He therefore held under Cony. *Crane* v. *Marshall,* 16 Maine R. 27. The Court meant, if he held by consent, and not adversely, the relation of landlord and tenant arose. That relation may subsist by parol.

The counsel for the tenant *assumes* that no entry had been made by the demandant, before action brought. No question *is made, in the case stated, on that subject.* He pleads a special plea, denying the freehold to be in himself, but does not state specifically in whom it is, and issue is joined upon it. And the Court ruled, upon the facts in the plea, that if Ames knew that his father had acknowledged Sam'l Cony's title, when he gave a deed of the life estate, it was an act of disseisin. Ames received a deed of his father, and gave one back, on the same day. By the purchase of his father he claimed to own it, and by the deed back, he undertook to exercise absolute dominion over it. The presumption is, that he was in possession, and that the acts corresponded with the deeds. Thus he is shown to be a disseisor ; and if so, he is admitted to be amenable to the action. He made his father tenant for life. Tenant to whom ? He sets out those facts which of themselves show he is tenant of the freehold, and then denies he is so. But the Court was too liberal to the tenant in requiring the demandant to prove a disseisin. Where one exhibits his title, and says that from that title he is not tenant of freehold, and by the title he is in fact tenant of the freehold, that is, he claims a freehold estate, — judgment must be rendered against him. No question of disseisin arises. *The plea implies, that he is in possession, claiming the estate to the extent set forth.* So it is, if he pleads nul disseisin. If he sets forth an estate less than a freehold, and the issue is in his favor, he prevails. A tenant may acquire a freehold by a

refusal to quit, when his tenancy has expired, at the election of the landlord; but this principle does not elucidate the subject in question.

The Court submitted to the jury all the facts in dispute. Silas having died, those facts, relating to his claim of betterments, become of no importance.

Silas being in possession, under Samuel Cony, he was so in 1835, when Cony died. Cony therefore died seised. Indeed the tenant cannot disseise his landlord, but at his election. *Alden* v. *Gilmore*, 13 Maine R. 178; *Stearns* v. *Godfrey*, 16 Maine R. 158; *Sacket* v. *Wheaton*, 17 Pick. 103; *Peters* v. *Foss*, 5 Greenl. 182; *Porter* v. *Hammond*, 3 Greenl. 188.

Ames claims the fee simple, which is greater than a freehold. There ought to be some mode of trying the claim of the reversioner, before the termination of the life estate. A judgment against tenant for life would not affect the reversioner, nor *vice versa*. To place the title beyond question, there must be judgment against both. And to effect this object, each one must claim a freehold. If he had not interfered with the property, he might have *disclaimed* and recovered · his costs. But having in fact interfered with it, and still claiming ownership over it, when called upon, he attempts to free himself, not only from costs, but denies his liability to a suit, and claims costs. By denying he is tenant of the freehold, he admits he is tenant in some sense; and the facts show he has usurped the fee. He also told the demandant, that he and his father could hold the land.

Ames and his father were both wrongdoers. They cannot be allowed to modify or qualify their wrong. They are to be regarded in the same aspect in relation to the freehold. The defence of Ames is purely technical, and is not to be favored beyond what strict law would demand. *The reversioner and tenant for life* are both tenants of the freehold. Stearns on Real Actions, 2.

The opinion of the Court was afterwards drawn up by

SHEPLEY J. — The report does not fully set forth the conveyance from Ames Foss to Silas Foss and wife. It bears date on the sixth day of November, 1837, and was recorded on the sixth day of August, 1839 ; and it conveys a life estate in the premises on condition, " that if the said Ames render and deliver unto the said Silas and Sarah, and survivor of them, one third part of all the produce, which may be raised on said farm, for and during the said term annually, or support and maintain the said Silas and Sarah, whichever way they or either of them may elect, on said farm for said term, then the above deed to be void, otherwise to remain in full force." Ames Foss pleaded a special non-tenure, setting forth, that he had made this conveyance, and so concluded, that he was not tenant of the freehold. This plea and a part of the proceedings at the trial, seem to have been occasioned by an incorrect construction of this conveyance. Silas Foss seems to have been considered as legally entitled to the actual possession of the premises. The deed conveys a life estate in mortgage ; and it appears from the condition, that the mortgagor was entitled to the possession until condition broken. He was to deliver one third part of the produce of the farm to them annually, or to maintain and support them upon it. This he could not do without being the actual occupant and receiver of its products. They could not expect to receive one third part of them from the hands of another, while they were receiving in their own right the whole. They could not have intended, nor could they rightfully claim, to occupy and improve the farm without an entry for condition broken. There is no proof of such an entry. Ames Foss must therefore be considered as the actual tenant of the freehold, although his right to the possession was liable to be defeated by a failure to perform the duties required of him. Whether the instructions on this point were strictly correct or not, becomes immaterial ; for the plea and defence of non-tenure entirely fail.

The other points in the defence arose out of the alleged right

of Silas Foss to be considered as acquiring a title to the fee, or to the improvements, by an adverse possession for more than twenty or more than six years.   It appears, that he had been in the exclusive possession of the premises long enough to have acquired a title, if that possession can be considered as adverse to the rights of the proprietor.   To prove that it was not adverse, testimony was introduced by the demandant, that he made a written contract with Samuel Cony, in the year 1829, in relation to the premises. · That contract has not been copied into the case or made a part of it; and the contents of the paper can only be ascertained from a statement of them in the report.   That statement is, that the witness " testified, that he found a paper among his intestate's papers, signed by Silas Foss, dated in 1829, in which he promised to pay the taxes on lot No. 1, belonging to Samuel Cony."

If this be a correct representation of the purport and effect of the paper, it was a written admission, that lot numbered one, on which he lived, belonged to Samuel Cony. This would be a voluntary submission to that title, and a surrender of any rights acquired by any prior possession.   And from that time he must be considered as the occupant of the lot in submission to that title, until there be proof of some new act of disseisin. The conveyance to Ames Foss might be so regarded, but it was not recorded and the change in his position made notorious until after the conveyance to the demandant.   Whether the paper signed by him amounted virtually to a lease or not, it proved, that he had submitted to the title of the proprietor ; and by his subsequent. possession under such submission, he could not acquire any title to the soil or to the improvements upon it.

*Judgment on the verdict.*