Co-operative Building Bank *vs.* Emma A. Hawkins.

JULY 7, 1909.

Present: Dubois, C. J., Blodgett, Johnson, Parkhurst, and Sweetland, JJ.

(1)  *Admission.  Conclusions of Law.*

Defendant moved a house which plaintiff claimed projected upon its land, and plaintiff brought trespass *quare clausum* for the removal.   The location of defendant's lot depended upon the construction to be given to a description contained in a mortgage and mortgagee's deed to her:—

*Held,* that, the construction of the deeds being a question of law to be determined by the court, the admission of defendant, as to the location of the building with reference to her lot, contained in a bill in equity filed by her against plaintiff, was an admission based upon a conclusion of law, and not binding on her in the present action.

(2)   *Deeds.   Description.   Intention of Parties.   "About."  "At."*

The description in a mortgage deed was as follows:—" Beginning at a point *about* 315 feet distant from D. street and 363 feet distant from M. street, said land runs westerly bounded northerly by land of these grantors 100 feet to land of C. thence southerly bounded westerly by said C. land 50 feet to a corner; thence turning at right angles said land runs easterly bounded southerly by land of these grantors 100 feet to a corner; thence turning at right angles said land runs northerly bounded easterly by land of these grantors 50 feet to the first mentioned bound, together with all the buildings and improvements thereon." Thereafter the property was conveyed to the mortgagee under the same description, and she took possession of certain land, including a part of the land claimed by plaintiff to be its close, and including the whole of the dwelling-house:—

*Held,* that it clearly appeared that the intention of the definite language of the description was that the lot conveyed should not extend more than 100 feet east of the C. land, and though from the general expressions contained in the description and from extrinsic evidence it might be made to appear that it was the intention of the parties to include within the lines of the lot the whole house and land thereunder, such evidence should not be permitted to override the definite calls of the description, which restricted said lot within a line of 100 feet east of the C. land.

*Held,* further, that the word "about" indicated that exactness was not attempted, but that an estimate was intended rather than a precise measurement. In the construction of such a description the main intention of the parties should be sought, and if discovered, and not in conflict with the express language of the description, such construction, within reasonable limits, should be given to the estimated measurement as will carry out the intention of the parties.

(3)   *Deeds.   Words of Description.*

While the words "together with all the buildings and improvements thereon," alone, can not be permitted to extend the grant and override the definite calls of the description, they may be considered with advantage in determining the intention of the parties.

(4)   *Deeds.   Construing Description.*

In construing the description of a deed, the purpose should be to find the intention of the parties. When clearly and definitely expressed, it must control. If the description itself is ambiguous or uncertain in any particular, the intention of the parties in that particular may be sought from a consideration of all the calls of the description, of the state of the property, and of the circumstances in which the deed was made.

(5)   *Deeds.   Description.*

In considering the terms of a description, where the calls are definite they must be held to indicate the intent of the parties, clearly expressed in the instrument, and should not be extended to conform to an intention which might be gathered from other parts of the description or from extrinsic evidence.

(6)   *Deeds.   Monuments.*

As a general rule, known and fixed monuments and boundaries will control courses and distances, and metes and bounds expressed with certainty will include the land within them.

(7)   *Deeds.   Boundaries.   Monuments.*

An existing line of an adjoining tract may as well be a monument as any other object.

(8)   *Boundaries.   Questions for Court and Jury.*

What are the boundaries of land conveyed by a deed is a question of law; where the boundaries are is a question of fact.   When the description is indefinite in some particular and the intention of the parties must be sought, it is the duty of the court to construe the deed, and declare such intention so far as it appears in the instrument, and it is the duty of the jury governed by the instructions of the court as to the legal intent of the language of the deed, to determine the intention of the parties from the evidence as to the state of the property at the time of the making of the deed and the circumstances surrounding the transaction.

(9)   *Adverse Possession.   Admissions.*

Where defendant, by allegations in a bill in equity, which she brought against plaintiff in a prior action, admitted the title of plaintiff to the land whereon certain portions of the house at that time stood, such admissions interrupted the continuity of defendant's adverse possession.

(10)   *Adverse Possession.*

Possession by the grantee of a mortgagor under a deed of warranty will not be deemed to be adverse to the mortgagee without an explicit denial of holding under him brought to his notice.   The mortgagor and his assigns hold in privity with the mortgagee, and in subordination to his rights.

(11)   *Trespass.   .Evidence.   Plats.*

In an action of trespass *quare clausum,* plats showing location of the house according to the plaintiff's claim were properly admitted.

(12)   *Evidence.*

In an action of trespass *quare clausum,* evidence offered by defendant, as to her reason for filing a bill in equity against plaintiff in a prior action between the parties, as to the first time plaintiff laid claim to the property, and as to the nature of negotiations carried on between the parties, was properly excluded as immaterial.

(13)   *Trespass Quare Clausum.   Damages.*

Where defendant removed a portion of a house which extended over her line on to plaintiff's land, plaintiff is entitled to damages therefor.

Trespass Quare Clausum.   Heard on exceptions of defendant, and certain exceptions sustained.

Sweetland, J.   It appears from the testimony that on February 1st, 1894, one Annie Campbell was the owner of a tract of land on the westerly side of Main street, near Dudley

street, in the city of Pawtucket; that said tract measured two hundred feet on said Main street and extended westerly four hundred and sixty-three feet to land of one H. Conant, on which land of Conant it measured one hundred and seventy-nine feet. So far as appears from the testimony, said tract had not been platted into lots. On said February 1st, 1894, the said Annie Campbell was erecting a dwelling-house upon said tract, near its southwest corner. On said February 1st, 1894, said Annie Campbell mortgaged a portion of said tract to this defendant Emma A. Hawkins, as security for a negotiable promissory note for the sum of eighteen hundred dollars. Duncan H. Campbell, the husband of said Annie Campbell, joined with her in said mortgage deed and note.

The portion of said tract mortgaged to Emma A. Hawkins was described in said mortgage deed as "A certain lot or parcel of land situated in the City of Pawtucket, bounded and described as follows: Beginning at a point about 315 feet distant from Dudley Street and 363 feet distant from Main Street said land runs westerly, bounded northerly by land of these grantors 100 feet to the land of H. Conant, thence southerly bounded westerly by said Conant land 50 feet to a corner; thence turning at right angles said land runs easterly bounded southerly by land of these grantors, 100 feet to a corner; thence turning at right angles said land runs northerly bounded easterly by land of these grantors 50 feet to the first mentioned bound, together with all the buildings and improvements thereon, and is a part of the premises conveyed to Annie Campbell by deed from Mary A. Sullivan, dated May 3, 1889, and recorded in Pawtucket Records in B. 50, p. 115, to which reference is hereby made." Said mortgage deed from Duncan H. and Annie Campbell to Emma A. Hawkins was recorded in the land records of Pawtucket, on February 2nd, 1894.

It appears from the testimony that at the time of said mortgage said lot therein described was not marked by bounds placed upon the land, by fences, or in any other manner.

On April 18th, 1894, the said Annie Campbell mortgaged the whole of said tract to the plaintiff in this case, the Co-operative Building Bank, for the sum of $14,000. The said

Duncan H. Campbell joined in the mortgage deed and note. The mortgage to the Co-operative Building Bank was recorded in the land records of Pawtucket, on May 15th, 1894.

On July 15th, 1896, to prevent the commencement of foreclosure proceedings, which for some reason she did not wish to have taken, the said Annie Campbell, then a widow, conveyed by deed to Myron H. Hawkins, for Emma A. Hawkins, the premises described in the mortgage deed to Emma A. Hawkins. And thereupon, on said July 15th, 1896, the said Myron H. Hawkins, for Emma A. Hawkins, took possession of certain land, upon said tract, including a part of the land which the plaintiff alleges in its declaration to be its close, and including the whole of the dwelling-house which, as before stated in this opinion, was in process of erection on February 1st, 1894, and continued in possession of said land and said dwelling-house until October 22, 1906.

On April 14, 1897, the said Emma A. Hawkins, to protect her interest, foreclosed the premises described in the mortgage deed to her, and as attorney for the mortgagor conveyed said premises to herself by mortgagee's deed.

On November 20th, 1897, the Co-operative Building Bank foreclosed the said mortgage of Duncan H. and Annie Campbell to it, and as attorney for the mortgagor conveyed said tract, in said mortgage described, to itself by mortgagee's deed.

On December 27th, 1897, the said Co-operative Building Bank conveyed the entire tract, described in said mortgage and in said mortgagee's deed to it, by deed to one Blodgett, and on the same day the said Blodgett gave to said Co-operative Building Bank a mortgage back upon said entire tract.

On March 13th, 1901, having foreclosed the mortgage of said Blodgett to it, the Co-operative Building Bank, as attorney for the mortgagor, conveyed the entire tract to itself, by mortgagee's deed.

In February, 1903, the plaintiff, the Co-operative Building Bank, proceeded to plat said tract into streets and lots, and attempted to apply to said land the description of the lot contained in the mortgage deed of Duncan H. and Annie Campbell to Emma A. Hawkins; and in so attempting to apply

said description to the land the plaintiff took as the place of beginning, as the northeast corner of said lot, a point exactly three hundred and sixty-three feet west of Main street and exactly three hundred and fifteen feet south of Dudley street in said Pawtucket, and the plaintiff has so delineated a certain lot, as the lot of the defendant Emma A. Hawkins, upon its plat, which said plat was recorded in the land records of said Pawtucket on March 25th, 1903. Under the construction of said description so adopted by the plaintiff, the dwelling-house, before referred to, extends beyond the lines of said lot and onto land which the plaintiff alleges in its declaration to be a part of its close, said extension being more than seven feet along the south side of said house and about seven feet along the east side of said house.

On February 13th, 1903, the defendant, Emma A. Hawkins, having been informed of the claims of the plaintiff as to the location of said dwelling-house with reference to the lines of her said lot, joined with her husband in a bill in equity against the Co-operative Building Bank—drawn by a solicitor other than her attorney in the case at bar—and filed the same in the Appellate Division of the Supreme Court. Said bill was signed by said Emma A. Hawkins and her husband, but was not sworn to by either. Said bill averred the ownership by said Emma A. Hawkins of the lot described in the mortgagee's deed to her, and the ownership by the Co-operative Building Bank of the remainder of said tract, and further averred that "at about the time said mortgage deed was given by Duncan H. Campbell and Annie Campbell to said Emma A. Hawkins, a dwelling-house, a barn and other improvements were erected upon the land in question in this suit; and these buildings were so placed upon said property that the southerly portion of the barn projects beyond the lot included in the mortgage to said Emma A. Hawkins about one and one-third (1⅓) feet its entire length, and the southerly portion of the dwelling-house projects about seven and one-fourth (7¼) feet at the front and nearly eight (8) feet at the rear, . . . and practically all of the piazza across the front of the house and the front

steps are not upon the land included in the mortgage and deed to Emma A. Hawkins."

The complainants in said bill also averred that the Co-operative Building Bank at that time threatened to cut off "so much of said buildings and improvements as are not upon the land described in the deed to Emma A. Hawkins or to barricade that portion of the buildings so that they can not be used by tenants and occupants of the other portions of said buildings." In said bill the complainants sought, by way of relief, that the court in equity should order the sale of all the property referred to in the mortgagee's deed to Emma A. Hawkins, and so much of the adjoining land of the respondent in said bill as should justly and fairly be sold, and to have the proceeds of such sale, and also the amounts theretofore collected by Emma A. Hawkins as rentals upon said property, apportioned between Emma A. Hawkins and the respondent in the bill in such proportion as the court shall determine to be just and equitable.

A demurrer to said bill in equity was sustained, and said bill was afterwards ordered transmitted to the Superior Court and is now pending in said court.

At some time between October 22nd, 1906, and November 22nd, 1906, by direction of said plaintiff, Emma A. Hawkins, said dwelling-house was moved from its position at that time, and placed within the lines of the lot delineated as her lot on the plat of the plaintiff.

On December 11th, 1906, the plaintiff at bar commenced this action in trespass against the defendant, and its declaration alleges, in four counts, slightly differing in language, that the defendant broke and entered its close and with force and arms by her servants and agents raised from their foundations and removed from said close a portion of a dwelling-house and a portion of another building which were standing upon said close, and were the property of the plaintiff.

The defendant pleaded the general issue, and also that at the time of bringing the suit the defendant had been for the space of more than ten years in the uninterrupted, quiet, peaceable, and actual seizin and possession of the dwelling-house

and other building described in the declaration, and the land upon which said dwelling-house and other building stood during all of said time, claiming the same as her own proper, sole, and rightful estate in fee-simple, by reason whereof said defendant acquired a good and rightful title to said dwelling-house and other building and the land upon which the same stood.

At the trial of said action before a jury in the Superior Court the justice presiding instructed the jury that the only question for them to determine was as to the amount of the plaintiff's damages. The jury returned a verdict for the plaintiff for six hundred and eighty-two dollars.

The defendant filed a motion for 'a new trial, on the ground that the verdict in said case was against the evidence and the weight thereof; that the verdict in said case was against the law; and that the damages awarded to the plaintiff in said case were excessive. Said motion for a new trial was denied by the justice presiding in the Superior Court.

The case is before this court upon the defendant's bill of exceptions.

Before taking up the defendant's bill of exceptions in detail and in order, it will be of advantage to consider certain fundamental questions involved in the principal exceptions.

(1)    First: As to the effect, upon the location of her lot, of the defendant's admissions contained in the bill in equity, signed by herself and her husband. In the case at bar the defendant does not deny that the dwelling-house and barn were moved by her, as the plaintiff alleges. If the defendant's allegations in her bill in equity are to be taken as conclusive against her upon the question as to the location of the lines of her lot, then there was no matter before the jury except as to the amount of damages, unless the defendant had acquired title to the whole of said buildings, and the land upon which they stood, by adverse possession.

The defendant claims that the allegations of the bill in equity in this regard are not binding upon her. It is the uncontradicted testimony of the defendant, given at the trial, that she had no personal knowledge of the exact location of the lines of her lot at the time she signed said bill in equity; that at the

time she received said mortgage deed from Duncan H. and Annie Campbell, there were no bounds placed upon the land, that the bill in equity was drawn by her solicitor as the result of investigation of the land records made by him; that she thinks that she did not read the bill before she signed it, and that she did not swear to it.

The location of the defendant's lot upon said tract depends upon the construction which shall be given to the description contained in the mortgage and mortgagee's deed to her.   The construction of these deeds is a question of law, to be determined by the court; and the admission of the defendant as to the location of said buildings, with reference to her lot, was an admission based upon a conclusion of law.

It was held in *Crowell* v. *Bebee*, 10 Vt. 33, that "an admission by a party of a mistaken line for the true one, has no legal effect upon his title; and that a mutual recognition of a wrong line adjoining proprietors, and their acquiescence in such line unless accompanied by possession of one or both, according to it, and that continued for fifteen years, are not conclusive as to their respective rights."

In *Hawley* v. *Bennett*, 5 Paige, at 111:  "The decision of the vice chancellor that the admissions of Bennett while he remained in possession under his deed, and which were wholly inconsistent with the written evidence of his title, could not be received in evidence to destroy such legal title, was correct; as those admissions were unquestionably made under a mistake of the law as applicable to the case."

In *Crockett* v. *Morrison*, 11 Mo. 3: "It is also true, that a tenant's declarations are inadmissible to affect a documentary title and that such testimony would be a plain violation of the statute of frauds.   .   .   .   It is well settled, that the admissions of a party in relation to a question of law is no evidence.   Such admissions do not make the law either one way or the other, and where the matter admitted involves a question of law as well as fact, it falls within this rule, and is therefore incompetent proof."

In *Rice* v. *Ruddiman*, 10 Mich. at 137:  "though it was admitted by both parties that 'for the purposes of the trial Lake

Muskegon should be considered an arm or estuary of Lake Michigan and part and parcel thereof, and not as a widening or continuation of Muskegon river,' I am inclined to consider this rather as the admission of a conclusion of law from the facts, than as a mere admission of fact. Whether this lake is to be considered a part of Lake Michigan or as a widening of the Muskegon river, so far as it might be material, would be a question of law to be decided upon the facts of the case, and no admission of the parties' could bind the court as to the law."

See also *Jackson* v. *Shearman*, 6 J. R. 19; *Jackson* v. *M'Vey*, 15 J. R. 234; *Solomon* v. *Solomon*, 2 Ga. 18; *City of Detroit* v. *Beckman*, 34 Mich. 125; and *Machem* v. *Machem*, 28 Ala. 374.

(2)    We are of the opinion that the allegations of this defendant in her bill in equity do not affect her title to any part of the land, which upon a construction of her deed, shall be found to be within the description therein contained. The effect of the allegations of the bill in this respect should be distinguished from their effect upon any claim of title by adverse possession which may be made by the defendant to land which is not contained within her lot as described in the deed.

The second fundamental question to be considered is as to the construction which should be given to the description contained in the mortgage and mortgagee's deed to the defendant.

The testimony shows that before the defendant loaned the money to Annie Campbell and took the mortgage from Duncan H. and Annie Campbell, the said Annie Campbell showed to the defendant the dwelling-house then in process of erection; and it is a question, to be determined from the language of the deed and from the circumstances of the transaction, whether or not it was the intention of the parties to the mortgage that the same should cover the whole, and not merely a portion, of this dwelling-house. In this connection the language of the (3) description in said mortgage should be considered, wherein the mortgagor conveys the land "together with all the buildings and improvements thereon." While these words alone can not be permitted to extend the grant and to override the definite calls of the description, such words may be considered with advantage in determining the intention of the parties.

As was held in *Carville* v. *Hutchins*, 73 Me. 229: "When grant of land is made with fixed and definite metes and bounds capable of being ascertained on the face of the earth it seems clear that it cannot be enlarged so as to include adjoining land by the mere addition of the words 'together with the buildings thereon standing,' although such adjoining land is covered by corners of the buildings referred to." When the boundaries set out in the description are not definite, this and similar expressions may be given legal effect.

In *Wilson* v. *Hunter*, 14 Wis. 683, a mortgage described the premises conveyed as "the three story brick building now occupied by them as a store" and "situated on land described as follows, lot No. one in block number nine in the village of Whitewater." In point of fact, the store covered not only lot No. one, but also the west two feet of lot No. ten in that block. The court held that there can be no doubt that the intent of the parties was to convey the store and all the land upon which it stood. The land which is essential to the use of a building will pass by a conveyance of the building, if it appears that such was the intention of the parties.

(4)   In construing the description contained in the deed, the purpose should be to find the intention of the parties. When this is clearly and definitely expressed in the instrument, that expression must control. If the description itself is ambiguous or uncertain in any particular, the intention of the parties in that particular may be sought from a consideration of all the calls of the description, of the state of the property, and of the circumstances in which the deed was made.

This court, in an opinion written by Chief Justice Ames, said, in *Deblois* v. *Earle*, 7 R. I. 26: , "The cardinal rule in the interpretation of all instruments, guaranties included, is 'to read the writing' and taking its language in connection with the relative position and general purpose of the parties to gather from it, if you can, their intent in the questionable particular." And see *Scheible* v. *Slagle*, 89 Ind. 323; *Dawson* v. *James*, 64 Ind. 162; *Chapman* v. *Hamblet*, 100 Me. 454; *Kimball* v. *Semple*, 25 Cal. 440; *Roberti* v. *Atwater*, 43 Conn. 540; *Wooster* v. *Butler*, 13 Conn. 309; *Rosenberger* v. *Wabash Ry. Co.*, 96 Mo.

App. 504; *Hall* v. *Eaton*, 139 Mass. 217; *Murdock* v. *Chapman*, 9 Gray, 156; *Lovejoy* v. *Lovett*, 124 Mass. 270; *Goodyear* v. *Shanahan*, 43 Conn. 204.

It' appears also that the parties to the deed have given, by their acts, a construction to the description in question as one covering the whole house; for, when to prevent foreclosure proceedings under the mortgage, Annie Campbell conveyed the said lot by deed, containing a like description, to Myron H. Hawkins, for Emma A. Hawkins, the said Myron H. Hawkins entered into possession of the whole house under said deed, and, without objection from Annie Campbell, continued to collect the whole rent for the benefit of Emma A. Hawkins.

This court has held, in *Hiscox* v. *Sanford*, 4 R. I. 55, that, when the proper construction of written instruments is doubtful, when the language is ambiguous, when it is uncertain in what sense particular terms or expressions are used by the parties, evidence, as to the practical construction put upon the grant by the parties, is often admitted with great benefit and to the advancement of justice.

(5) In considering the terms of the description in question, certain of the calls are definite and must be held to indicate the intent of the parties, clearly expressed in the instrument. These positive calls should not be extended to conform to an intention which might be gathered from other parts of the description or from extrinsic evidence. "The chief purpose of construction is to develop the true intent of the language, and that intent should always be given paramount force when it has been discovered." (*Rosenberger* v. *Wabash Ry. Co.*, 96 Mo. App. 504). And "another principle is that description about which there is the least certainty must yield to those of greater certainty." (*Roberti* v. *Atwater*, 43 Conn. 540). And as a (6) general rule, known and fixed monuments and boundaries will control courses and distances, and metes and bounds expressed with certainty will include the land within them (*Nichols* v. *Turney*, 15 Conn. 101).

The description calls with the utmost certainty for a lot in form a rectangle, with north and south lines each one hundred feet long, and with east and west lines each fifty feet long, and

with the west line conforming to the west line of the whole tract of which it is a part and also conforming to the east line of the land of H. Conant.   The call for the west line bounded by the land of H. Conant must have controlling force in the nature of a monument.   An existing line of an adjoining tract may as well be a monument as any other object (*Abbott* v. *Abbott*, 51 Me. 575).   The west line determines the location of the east line, which must be parallel with and one hundred feet from the west line.

It thus appears clearly that the intention of the definite language of the description is that the lot conveyed shall not extend more than one hundred feet east of the Conant land. Though from the general expressions contained in the description, and from extrinsic testimony, it might be made to appear that it was the intention of the parties to include within the lines of the lot the whole house and the land thereunder, such evidence should not be permitted to override the definite calls of the description which restrict said lot within a line of one hundred feet east of the Conant land.   It might be stated in this connection that the easterly side of the body of the said dwelling-house, as it was built, coincided substantially with a line one hundred feet east of the Conant line; and it does not appear from the testimony whether the piazza and front steps, which extend to the east of such line, were built at the time of the execution of said mortgage to the defendant, or whether they were a part of the original construction of said house.

The uncertainty in the application of this description to the land arises from the indefiniteness of the call as to the point of beginning, or the easterly terminus of the north line, which determines the location of said north line and also of the south line parallel with and fifty feet from it, and fixes the location of the lot upon the tract.   This point must lie in the line one hundred feet east of the Conant line, and according to the terms of the description is about three hundred and fifteen feet distant from Dudley street.   If no force is conceded to the word "about," there is no indefiniteness in the description, and the lot as delineated on the plat of the Co-operative Building Bank represents a proper application of the description to the land.

If, however, from other parts of the description and from the circumstances existing at the time of the execution of the deed, to which the parties presumably had reference, the purpose of the parties in the use of the word "about" can be ascertained, such effect should be given to that word as will carry out the intention of the parties.

The justice presiding at the trial in the Superior Court ruled that this word should not be held to render the description uncertain, but should be considered as equivalent to the word "at." In some circumstances this has been held a proper construction of the word, as in *Simms, Lessee,* v *Dickson,* 3 Tenn. 137, where the court said: "as to the word 'about' used in the grant, I am of the opinion that it does not make the land uncertain. It has always been determined that the word 'about' signifies in an entry or grant 'at' unless something can be shown to evidence a contrary intention."

The word "about," occurring in a description in deeds, has received judicial consideration and construction in a number of cases. The word was considered in a line of cases calling for a construction of the description, in certain entries and preemption in the wilderness at the time of the settlement of Kentucky (*Kincaid* v. *Blythes' Heirs,* 5 Ky. 479; *Grubb* v. *Rice,* 5 Ky. 107; and in the opinion of Marshall, C. J., in *Johnson* v. *Pannel's Heirs,* 15 U. S. 206). The result of these cases is that the vague words "about" or "nearly," and the like, occurring in the descriptions of distances, are to be considered in giving effect to the intention of the parties, but are to be rejected if there are no other words rendering it necessary to retain them, and that then the distances mentioned are to be taken as positive.

The case of *Purinton* v. *Sedgley,* 4 Me. 283, is to the following effect: In a deed to the ancestor of the grantors in the deed under consideration, the southerly line of the land conveyed is described as "running an east-south-east course, parallel with the northerly line aforesaid about two hundred and sixteen poles, more or less, to the Abagadasset river aforesaid." In a deed of the heirs of this grantee, conveying a whole or part of the land conveyed to their ancestors, the southerly

line is described as "running east-south-east about two hundred and sixteen poles," without reference to said river as the terminus.  Exactly two hundred and sixteen poles would not extend to the river.  The majority of the court held that this deed should be construed with reference to the former deed, and the intention was found to extend this line to the river; that the word "about," in connection with other circumstances, may have been used, and probably was used, because the exact distance from or to the river was not known when either deed was written; whereas, if the intention of the grantors had been that the third line or course should stop at the end of the two hundred and sixteen rods, the word "about" was not only superfluous, but improper and deceptive.

In *Hall* v. *Eaton,* 139 Mass. 217, a line described in the deed as "sixty-one feet more or less" was permitted to be extended to over eighty feet to carry out the intentions of the parties, as expressed in other parts of the description, the court saying:  "The question to be determined is the intention shown in the language of the deed, in the light of the situation of the land and the circumstances of the transaction, and sometimes with the aid of declarations and conduct of the parties in relation to the subject matter."

In *Iverson* v. *Swan,* 169 Mass. 582, in deeds from a common grantor, the boundary line between the plaintiff and defendant was described as at right angles to a certain street.  Plaintiff showed that, if the line was drawn at a right angle, the defendants' southeasterly boundary would be fifty-three and a half feet instead of "about fifty feet" as in the deed.  The court held there was no conflict "between the angle and the measurement, since the measurement does not purport to be exact, but on its face is only a rough estimate, prefaced by the word 'about.' "

In *Atkins* v. *Bordman,* 2 Met. 457 and 20 Pick. 291, the court considered a reservation in a deed of "a gate or passageway of about five feet wide."  The court, in an opinion written by Shaw, C. J., says:  "Although the gate was described as 'about five feet wide,' there was no warranty of its width and no words declaring that he should have the width of the way

as it then existed, or any equivalent expression. And the word 'about' indicates that it was not intended to be definite. It was therefore the right of a suitable and convenient passage for purposes indicated."

In *Maryland Construction Co.* v. *Kuper*, 90 Md. 529, at 548, the court says: "The use of the word 'about,' indicated that the parties only contracted for a number of feet that would be a near approximation to those mentioned and negatives the conclusion that entire precision was intended."

The use of this word in descriptions, as in its ordinary use, indicates that exactness is not attempted, and that an estimate is intended to be given rather than a precise measurement; that the parties are trying to provide that their main intention as to the grant shall not be defeated by a precise description in some particular wherein precision is not then possible to them. When the word appears in a description, as in that under consideration, it is notice to all that, to carry out the intention of the parties, an elasticity may be given to the call in regard to which the parties have not considered it advisable to be exact. In the construction of such a description the main intention of the parties should be sought, and if the intention can be discovered, and it is not in conflict with the express language of the description, such construction, within reasonable limits, should be given to the estimated measurement as will carry out the intention of the parties.

The defendant in the case at bar contends that a consideration of the rest of the description and the surrounding circumstances warrants the conclusion that the parties intended to so locate the lot, described in the mortgage to the defendant, as to include therein the whole of the dwelling-house then in process of construction, and that, as the exact distance from Dudley street was not known to them, they sought to carry out their intention by roughly estimating that distance, rather than to imperil their intention by an attempt at exactness. If it should be found that it was the intention of the parties to include the dwelling-house in the lot covered by the mortgage, the discrepancy of seven or eight feet between

the exact and the estimated distance from Dudley street would not be so great as to defeat the intention of the parties.

(8)   The question arises whether the determination as to the intention of the parties is for the court or for the jury.   It is a familiar rule that what are the boundaries of land, conveyed by a deed, is a question of law; where the boundaries are, is a question of fact.   The court must determine the first, and the jury must ascertain the second, (*Abbott* v. *Abbott*, 51 Me. 575; *Clark* v. *Wagoner*, 70 N. C. 706; *Wooster* v. *Butler*, 13 Conn. 309; *Reed* v. *Proprietors of Locks*, 49 U. S. 274).

When the calls of the description are definite and unequivocal, the construction by the court amounts to a location of the boundaries.   When, as in the case at bar, the description is indefinite in some particular and the intention of the parties must be sought, it is the duty of the court to construe the language of the deed and to declare the intention of the parties so far as their intention appears in the instrument, and it is the duty of the jury, governed by the instructions of the court as to the legal intent of the language of the deed, to determine, if possible, the intention of the parties, in the questionable particular, from a consideration of the evidence as to the state of the property at the time of the making of the deed, and the circumstances surrounding the transaction.

(9)   The remaining general question to be considered is as to the defendant's claim of title, by adverse possession, to all the land upon which the house and barn stood, without regard to whether the whole of said land was or not included within the lines of the lot mortgaged.   This question would, in any event, have a bearing upon the title to the land under such part of the dwelling-house as lay east of a line one hundred feet east of the Conant line, as such land is clearly beyond the lot as described in the mortgage deed.   And if it should be decided that the easterly end of the north line of said lot should be taken as exactly three hundred and fifteen feet south of Dudley street, this question would have a bearing upon the title to the land under the southerly portion of the barn and dwelling-house.

On July 15th, 1896, Annie Campbell conveyed to Myron H. Hawkins, for Emma A. Hawkins, "a certain lot or parcel of

land with all the buildings and improvements thereon situated in the City of Pawtucket," described as in the mortgage deed to the defendant, and on said July 15th, 1896, Myron H. Hawkins, for Emma A., took possession of the dwelling-house and barn and began to collect the rent for the same and continued to do so until the sale under foreclosure, when Emma A. bought in the property described in said mortgage to her and continued to hold possession and to collect rent therefor until October 22nd, 1906, when she moved the buildings as before set forth.

The defendant, because of the privity existing between Myron H. Hawkins and herself, seeks to tack the possession of Myron H. upon her own subsequent possession, and claims a possession of all the land in dispute adverse to the plaintiff for more than the statutory period of ten years. Under the statute, in order to acquire a title by adverse possession it is necessary that the claimant should have been for the statutory period in the uninterrupted, quiet, peaceable, and actual seizin and possession of the land, "*claiming the same as his, her, or their proper, sole, and rightful estate in fee-simple.*"

On February 13th, 1903, the defendant, by the allegations of her bill in equity, signed by her, and filed in court, admitted the title of this plaintiff to the land upon which certain portions of the house and barn, therein specified, at that time stood. These admissions of title in the plaintiff interrupted the continuity of the defendant's adverse possession, if any had commenced to run in her favor.

In *Stump* v. *Henry*, 6 Md. 201, the court holds that, if the title of one is upon possession alone, then it must be adverse, exclusive, and continuous for more than twenty years. It surely is not when by the admissions in his bill in equity he admitted that the land was sold under execution, upon a judgment against himself, within twenty years.

In *Horton* v. *Davidson*, 135 Pa. St. 186, the court held that the defence of adverse possession fails when there was a distinct recognition of plaintiff's title by the defendant in a letter written by him.

In *Davies* v. *Collins*, 43 Fed. 31, the court says: "The moment that the person in possession of the premises ac-

knowledges that he is not the owner, the running of the statute, in common language, is broken and the twenty years or whatever time has been counts for nothing."

In *Lamb* v. *Foss*, 21 Me. 240, the written admission, by a person claiming adverse possession, that land in question belonged to another would be a voluntary submission to that title and a surrender of any rights acquired by any prior possession.

In *City of St. Paul* v. *Chicago, &c., Ry. Co.*, 63 Minn. 330, held,—a recognition, by the occupant, of the title of the owner will break the continuity of claim, as well as the continuity of possession, although the occupant continues in possession of the premises; and in such case he must begin *de novo* if he would claim the benefits of the statute.   And see *Robinson* v. *Bazoon*, 79 Tex. 524; *Olson* v. *Burk*, 94 Minn. 456; *Deppen* v. *Bogar*, 7 Pa. Supr. Ct. 434; *Lovell* v. *Frost*, 44 Cal. 471; and *Miller* v. *Keene*, 5 Watts. 348.

Further, it appears that, without the admission of this plaintiff's title made in the bill in equity, the defendant can not be held to have title by adverse possession, against the plaintiff, of any of the land in question.   The defendant claims an entry into possession of the dwelling-house under a grant to Myron H. Hawkins from Annie Campbell, who had previously given a mortgage of the whole tract to the Co-operative Building Bank, which mortgage was then subsisting and was a first mortgage as to all land not included within the term of the mortgage previously given to the defendant.

This court, in *Doyle* v. *Mellen*, 15 R. I. 523, adopted the opinion of *Wittington* v. *Flint*, 43 Ark. 504, that "possession by the grantee of a mortgagor under a deed of warranty will not be deemed to be adverse to the mortgagee without an explicit denial of holding under him brought to his notice. The mortgagor and his assigns hold in privity with the mortgagee and in subordination to his rights."   And see cases cited in *Doyle* v. *Mellen, supra*, and also *Devyr* v. *Schœfer*, 55 N. Y. 446, *Watts* v. *Creighton*, 85 Iowa, 154; *Maxwell* v. *Hartman*, 50 Wis. 660; *Harding* v. *Durand*, 36 Ill. App. 238; *Chouteau* v. *Riddle*, 110 Mo. 366; *Lowry* v. *Tilleny*, 31 Minn. 500.

(11)    We now come to a consideration of the exceptions of the defendant, contained in her bill of exceptions.   The first and second exception is to the admission in evidence of two plats prepared by the engineer of the plaintiff, from his field notes, on which plats the lot of the defendant is delineated, in accordance with the claim of the plaintiff, as beginning at its northeast ·corner, exactly three hundred and fifteen feet south of Dudley street.   As these plats show the location of the house and barn with reference to the land, according to the plaintiff's claim, there was no error in their admission.   Exceptions are overruled. .

(12) . The third, fourth, and fifth exceptions are to the ruling of the justice presiding, excluding the following questions asked by the defendant:   "60 Q.   What was the reason for filing this bill in equity?"   "66 Q.   When was the first time that the Co-operative Building Bank laid claim to any part of this house?" and a question as to the nature of negotiations carried on between the plaintiff and the defendant for a settlement of matters in controversy, which negotiations did not result in a settlement of the differences of the parties.   Each of these questions appears to be immaterial, and the exceptions are overruled.

The sixth exception set out in the bill is to a ruling of the justice and an exception thereto by the defendant, appearing on page 71 of the transcript.   There does not appear upon said page any ruling or exception, and the counsel for the defendant, in his argument or in his brief, has not pointed it out to the court.   The sixth exception is not considered.

(13)    The seventh exception is to the instruction of the justice to the jury, that the only question before them was as to the amount of the plaintiff's damage.   This exception should be sustained.   The plaintiff was clearly entitled to damages for the removal of that portion of the house which extended over a line one hundred feet east of the Conant line, onto the land of the plaintiff, and the jury should have been so instructed.   But whether the southerly portion of the house and barn was on the land of the plaintiff or the defendant, and hence whether its removal by the defendant constituted a trespass on the close

of the plaintiff, were questions for the jury, as has been indicated before.

The eight exception was to the refusal of the justice to charge the jury as requested in defendant's 1st, 3rd, 4th, 5th, and 6th requests.  These requests are as follows:

"1.   That the word ' about ' in the defendant's deed wherein is the language ' about 315 from Dudley street ' should be construed, if possible, in such manner as to carry out the meaning and intent of the grantor with reference to the house and lot conveyed or intended to be conveyed.

"3.   That the jury is entitled to consider and should consider the evidence introduced in this case upon the question of the defendant's peaceful, adverse possession of the land and part of the house standing thereon claimed by the plaintiff and that if the jury find that the defendant was in the peaceable and adverse possession of said land and part of the house standing thereon for ten years prior to bringing this suit then the defendant is entitled to a verdict.

"4.   That it is for the jury to say from all the testimony in this case whether or not the defendant is guilty of trespass in this case.

*"5.   That if the jury find from the evidence that the defendant for the space of ten years was in the uninterrupted quiet peaceable and actual seizin and possession of the land upon which the house in question stood and the land upon which it stood.

"6.   The jury is instructed that before it can find a verdict in damages for the plaintiff it must determine whether or not the defendant is guilty of trespass as alleged in the declaration."

The refusal of the first request was error.  The court's ruling as to the other requests was proper.  As to the fourth and sixth requests, the jury were properly instructed that the defendant was guilty of trespass in removing from the land of the plaintiff the piazza and front steps and such other portions of the dwelling-house as extended onto the land of the plaintiff on the easterly side of the house.

* This is the language of the exception.

The ninth exception, which was to the decision of the justice denying defendant's motion for a new trial, should be sustained.

The defendant's exceptions are sustained, as above specified, and case is remitted to the Superior Court for a new trial.

*Dexter B. Potter, Alfred S. Johnson, Arthur P. Johnson,* for plaintiff.

*James A. Williams,* for defendant.